No. 49,972

THE COMBINED INVESTMENT COMPANY, a Partnership, *Appellee and Cross-Appellant,* v. BOARD OF COUNTY COMMISSIONERS OF BUTLER COUNTY, KANSAS, *et al., Appellants and Cross-Appellees.*

(605 P.2d 533)

Opinion filed January 19, 1980.

*Phillip Mellor, James R. Schaefer, Arden P. Miller,* and *Kim A Roberts,* of Mellor, Schaefer & Miller, P. A. of Wichita, were on the brief for the appellants and cross-appellees.

*Robert M. Siefkin,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause, and *Jerry G. Elliott* and *William R. Sampson,* of the same firm, and *James B. McKay, Jr.,* of McKay, McKay & Hargrove, of El Dorado, were with him on the brief for appellee and cross-appellant.

*Geary N. Gorup,* county attorney, was on the brief *amicus curiae* and for cross-appellees.

The opinion of the court was delivered by

MILLER, J.: This is an appeal by intervenors from a judgment finding the action of the Board of County Commissioners of Butler County denying an application for a zoning change to be arbitrary and unreasonable, and ordering the approval of the application.

The Combined Investment Company, a partnership consisting

of G. Marc Myers and others, owns the land. It commenced this action against the Board of County Commissioners after its request for a change of zoning was denied. Charles Rombold and several other residents of the county who opposed the change intervened. We will refer to the parties as the plaintiff or the landowner; the Board; and the intervenors.

The first issue is whether the findings of the trial court are supported by the evidence. Additionally, appellants contend that the trial court erred in its conclusions as a matter of law. A somewhat detailed statement of the background facts is necessary.

The plaintiff has owned a quarry in Butler County since 1969; the quarry was in existence prior to that time, and has been in operation since 1952. The quarry is operated by the George M. Myers Construction Company, and is known as the Myers Quarry. This quarry is the only source of state approved concrete aggregate in Butler County; it mines what is known as Cresswell rock. The supply of suitable rock appeared to be dwindling, so in 1969 plaintiff purchased a quarter section of land immediately east of the present quarry as a reserve, and in 1976 it sought to have the zoning on about 137 acres of that quarter section changed from agricultural to quarry. The Butler County Planning Board held two hearings, then recommended approval. A protest by the owners of 20% of the land within 1000 feet of the boundaries of the 137-acre tract was filed in the office of the county clerk; therefore a unanimous vote of the Board of County Commissioners was required to grant the requested zoning change. K.S.A. 19-2920. The Board, without hearing further evidence, denied the change, two members of the Board voting in favor of plaintiff's application and one member, Commissioner Mauk, voting against it. This action followed.

The petition set forth two causes of action. By the first, plaintiff seeks a decree granting rezoning on the basis that Commissioner Mauk's vote was arbitrary and capricious; by the second, plaintiff seeks a determination that K.S.A. 19-2920 is unconstitutional. The trial court upheld the constitutionality of the statute, and that ruling is not challenged on appeal.

At a pretrial conference held immediately before trial, the trial court ruled that it would limit plaintiff's evidence to those matters and evidence presented to Commissioner Mauk or available to

him from the Planning Board minutes and to any other evidence relevant to the conflict of interest question raised by plaintiff on the day of trial. The court further ruled that any other evidence that the parties wished to present would not be considered, but would be permitted to be proffered to preserve the record in the event of an appeal. Trial was completed in two days; some evidence was not admitted but was proffered, and as to the latter the trial court did not permit cross-examination.

The trial judge made extensive and detailed findings of fact and conclusions of law. The findings were attacked by the intervenors; the judge then reviewed all of the findings and modified many of them. The resulting amended findings of fact, and the conclusions of law, are as follows:

"1.  The Combined Investment Company filed an application for and paid the zoning fee for change of zoning from Agricultural to Quarry on the [137-acre tract here involved] on July 29, 1976  . . . .

"2.  The appropriate legal notices were mailed and published, and the first hearing before the Butler County Planning Board was held August 2, 1976.

"3.  Two of the three County Commissioners  . . .  attended the hearing before the Butler County Planning Board on August 2, 1976. All three County Commissioners had received notice of the hearing and were aware that the Plaintiff's zoning request would be considered at that time.

"4.  The third County Commissioner, William D. Mauk, Sr., did not attend the August 2, 1976, hearing even though the property to be rezoned was in his district.

"5.  A substantial majority of the evidence presented by Combined Investment Company in support of its request for a zoning change was presented at the August 2, 1976, hearing.

"6.  Minutes of the August 2, 1976, hearing were taken by a secretary from the office of John Tipton, zoning officer for Butler County, Kansas. At the September 7, 1976, hearing, A. Martin Millard, representing some of the land owners in the area, objected to the minutes  . . . .  In this trial Plaintiff has likewise objected to them as incomplete and sometimes inaccurate. Nevertheless, the Planning Board adopted them with an amendment which had been mailed, by vote of 7-0. No recording or other transcription was made. The evidence was that the meeting was lengthy and admittedly the 9 or 10 pages of minutes would represent a rather highly summarized report of the proceedings, but one that is substantially accurate.

"7.  At this August 2, 1976, hearing, the Butler County Planning Board requested that Plaintiff conduct a seismographic study of a quarry blast. Combined Investment Company agreed to conduct such a study, and report same to the Planning Board at the next hearing.

"8.  Evidence presented at the first hearing indicated as follows:

    a.  The highest and best present use of the property to be rezoned was quarry use.

    b.  That the described property is 2,440′ X 2,440′ with an 8′ overburden and 8′ to 10′ of rock.

c. That the quarry would provide an economic impact for Butler County as it was the only quarry in the County that has quarriable commercial State approved aggregate.

d. Plaintiff purchased the subject property in 1969 as a reserve for an existing quarry, east of and adjacent to the subject property. This quarry is presently operated by the George M. Myers Construction Company, as it was at the time of Plaintiff's purchase of the subject property in 1969. . . .

e. The existing quarry has been in operation since 1952. It is now almost depleted and will cease operations in a short period of time if Plaintiff's application is not approved.

f. From the time of its inception, the existing quarry has been in a sparsely populated area. The continued operation of the quarry in the subject area will not have any more impact on persons living or using the surrounding area than now exists.

g. Mr. Martin Goedecke, an engineer for Plaintiff, estimated that the new quarry would last about 15 years; that the shocks would not increase; and if they got closer to houses, they would decrease the charges.

h. The quarry's economic importance to Butler County and the State of Kansas is substantial. The more important elements are as follows:

. . . .

(2) The quarry directly employs 15-20 persons in Butler County, and the income paid those employees directly supports 120-180 Butler County residents.

(3) Support for these residents and jobs for those employees will be lost if the quarry is not permitted to mine its reserves in the subject property.

. . . .

(5) The Myers quarry is one of two principal quarries in western Butler County that produces gravel and rock material for both Butler and Sedgwick Counties. The other quarry is owned and operated by L. A. Knebler and is known as the Knebler Quarry.

i. Ted Farmer is a licensed professional civil engineer employed by Butler County, Kansas, as county engineer. He is in charge of the construction, maintenance and repair of all roadways and bridges in the county road system. No one made any complaints of blasting or of dust from the operation of the quarry itself to the county engineer prior to the August 2, 1976, hearing.

j. The Butler County engineer personally inspected the Myers quarries on numerous occasions and believes that dust therefrom is not any more significant than dust from a blowing wheatfield.

k. Mr. Farmer further testified, without contradiction, that the portion of 21st Street that Mr. Nath complained of lies within a township in Commissioner Mauk's district. Commissioner Mauk has never before or after this incident approached the county engineer on behalf of that township to discuss improvements in dust or other road conditions in that area.

l. Mr. Farmer made no secret of the fact that he favored Plaintiff's request for a zoning change and both the Planning Board and the County Commission were aware of his position at the time of their votes on Plaintiff's application.

m. Ralph Dawson, a blasting expert from Tulsa, Oklahoma, testified that the Plaintiff was using a 10 year study made by the U. S. Bureau of Mines, which determined the number of pounds of charge and the distance to the nearest house in figuring the amount that could cause damage. He further stated that the area to be quarried was a shallow ledge and a small charge would be used; and that Plaintiff was presently using 10% of the amount required to cause damage.

n. Mr. Dawson had toured the area surrounding the quarry and was familiar with the structures in that area. In his opinion, neither the noise nor the air or ground vibration from any of the quarry blasts was sufficient to cause damage to persons or property in the quarry area.

o. Marc Myers testified that in July of 1976, the State Department of Health required the Plaintiff to install dust control measures.

"9. Evidence was introduced at the first hearing showing the amount of explosives used at the existing quarry and the manner of their use. That evidence was supplemented at a subsequent hearing on September 7, 1976, by a report on the use of seismographic instruments to test the effect of the use of explosives on surrounding property. That seismographic evidence, presented to the Planning Board by geophysicist David Bowling, indicated the Myers Quarry could use 10 times as much explosive per delay as they are presently using without creating or causing structural damage to buildings in the vicinity of the quarry.

"10. At the September 7, meeting Marc Myers stated that they had constructed a one-story, metal, scale-house with a poured concrete foundation at the quarry site, several years ago and that it was in sound condition.

"11. At the September 7, meeting there was concern expressed by Dr. Berg and others relating to the effect of blasting, if any, on water wells in the area. Mr. Myers testified that they had 3 wells at the quarry, 35´, 70´, and 160´, respectively; that the 160´ well produced about 800 gallons of water a minute; and that they had never experienced any drawing down of the water, although great amounts were used in their operations.

"12. The principal explosive used by the Myers Quarry is a product from DuPont Company called 'Tovex.' Tovex is the safest, stablest, most reliable explosive compound in use today.

"13. 85% of the products removed from the Myers Quarry are shipped to Sedgwick County by truck. The products leave the plant on a north-south gravel road that runs approximately one quarter mile north, then west one mile, where the trucks leave the gravel surface and travel on asphalt. The east-west road is North 21st Street. It is a township road in the Augusta township and is a public thorough-fare. Neither the Plaintiff nor the George M. Myers Company has the right to control, restrict, or otherwise determine the use, maintenance, or traffic along the two roads in question. 21st Street west of its intersection with Santa Fe Lake Road is one of the strongest and best asphalt roads in Butler County and has been improved expressly to accommodate the truck traffic to and from the Myers Quarry.

"14. Despite the absence of any legal obligation on behalf of the Plaintiff or the George M. Myers Company to maintain the gravel portion of 21st Street, the George M. Myers Company has placed gravel and has applied dust control substances on the road surface.

"15. At the August 2, 1976, hearing, Lynn Woodward, professor of real estate and land use economics at Wichita State University, presented evidence that the highest and best present use for the subject property is as a quarry. Quarrying the rock would make the property such that its highest and best use would be for residential purposes, in conjunction with pleasing lake-front home sites. Within a ten-fifteen year period, such residential development of the subject area would substantially increase surrounding property values.

"16. Commissioner Mauk testified that the present value of rock is $2.75 per ton.

"17. The majority of the objections to the quarry operations at the zoning board hearings pertained to the dust which apparently comes from the use of the gravel portion of North 21st Street. This is followed by complaints of blasting noise, cracks in foundations and walls allegedly caused by blasting, and miscellaneous complaints pertaining to traffic, speeding violations, etc.

"18. The second hearing before the Butler County Planning Board was held September 7, 1976, and was attended by the following members of the Planning Board: Don Irwin, Chairman, Gene Spear, Vice-Chairman, and the following members: Charles Petrie, Lowell C. Pennington, Kenneth Weber, Ray Harvey, Dwight Adams, and Art Stevens. [Gene] Spear was the only member of the Planning Board at that meeting who had not attended the meeting on August 2, 1976. At the second meeting, all three commissioners were in attendance, to-wit: Robert Patterson, John B. Cameron and William D. Mauk, Sr. Also in attendance were John Tipton, Butler County Zoning officer, and Ted Farmer, Butler County engineer. Prior to this meeting, affidavits had been filed in the zoning office by E. W. Nath, Gene Simmons, A. Martin Millard, Guy N. Jensen and G. Maxwell Corbin, claiming that the minutes of the August 2, hearing did not accurately reflect the proceedings before the Planning Board. These affidavits are marked and admitted as Plaintiff's Exhibit No. 12.

"19. One of the purposes of the meeting of September 7, was to receive the evidence of seismographic testing conducted by David S. Bowling, and to hear and determine the validity, if any, of complaints of residents in the quarry area. At the conclusion of that hearing, Lowell Pennington moved to grant Plaintiff's request to rezone the area in question from A-1 to Q (general agriculture to quarry and mining district). Art Stevens seconded the motion. The motion carried 6-1, the only opposing vote being registered by Mr. Spear, the one member of the board who had not attended the August 2, 1976, hearing.

"20. Following the September 7, Planning Board hearing and prior to voting on November 22, Commissioner Mauk testified that he was contacted and talked privately with the following land owners in the area of the quarry: A. Martin Millard, G. Maxwell Corbin, E. W. Nath, Guy N. Jensen and Virgil Ralston. He also received a large number of phone calls from people objecting to rezoning. He also talked to Marc Myers and received a phone call from State Senator Frank Gaines on behalf of Mr. Myers.

"21. Commissioner Mauk did not apprise the other commissioners of these conversations, nor did he advise the Plaintiff of these conversations prior to his vote on November 22, 1976.

"22. On Monday, November 22, 1976, Plaintiff's application came on for

hearing before the Board of County Commissioners of Butler County, Kansas. Just prior to the meeting, the three County Commissioners met informally, and determined that they would not permit further evidence on the questions and stated how each Commissioner was going to vote. Prior to this time, Commissioner William Mauk, who had not attended the initial Planning Board hearing, read the minutes of that hearing, but he did not examine any of the exhibits or other like evidence introduced at that hearing, and he did not discuss the question in depth with the other two Commissioners before voting. Thereupon, the Commissioners voted as follows: In favor of the zoning change, Robert Patterson and John Cameron; against the zoning change, William D. Mauk, Sr.

"23. Thereafter, Plaintiff filed a request for reconsideration of the Commission's action and that matter came on before the Board of County Commissioners on Monday, December 6, 1976. Commissioner Mauk stated at that meeting that he would not change his vote.

"24. The reasons Commissioner Mauk gave for voting as he did was his reliance on Max Corbin, Ralston, Nath; because he felt Plaintiff owed certain obligations to the people in that area, relating to the road conditions of 21st Street, although he admitted that the maintenance of this road was not Plaintiff's obligation; because of the long term residents of that area; and finally, he stated that he had considered the loss of tax revenue, plus the salaries of Plaintiff's employees. Mr. Ralston claimed he lost 2 water wells because of concussions from the explosives originating at the quarry; G. Maxwell Corbin complained of noise from the explosions, but he had suffered no physical damage of any kind by reason of the operation of the quarry; E. W. Nath complained of dust from the traffic on 21st Street. Commissioner Mauk made no effort to verify the validity of the complaints of these 3 individuals and disregarded the complaints of all other protestors, believing that only long time residents in the quarry area had grounds to complain of its operation.

"25. E. W. Nath did not reside in the area until he built his house in 1977, and his house is located approximately one mile west of the present quarry operation. G. Maxwell Corbin's house is located approximately one mile northwest of the present quarry operation; and Virgil Ralston's house is located approximately one mile west of the present quarry operation, to the southeast of E. W. Nath. The Nath house and the Ralston house are located to the south of 21st Street, and the Corbin home is located one mile north of 21st Street.

"26. Commissioner Mauk did not attend the Planning Board hearings, because he believed the Planning Board members were all good people, and were the ones who should hear the evidence and determine what should be done in regard to the zoning and planning for the county. Mauk relied upon them to carry out their duty and to hear all the evidence. Until the vote on November 22, 1976, commissioners had always voted to affirm the Planning Board's recommendation, except in one case where a matter was sent back to the Planning Board for further study.

"27. In 1972, E. W. Nath and A. P. Nath instituted a suit in the District Court of Butler County, Kansas, against George M. Myers, Inc., George M. Myers, and the Augusta Township, seeking $10,000 in damages for injuries and damages received by reason of dust coming from 21st Street and blowing onto property that they owned on the north side of 21st Street, east of Santa Fe Lake Road. The Naths claimed that the dust made a house located on that property untenable and

uninhabitable and that it caused injury to property and crops located on that same property. They requested that the Court declare 21st Street a nuisance and enjoin defendants' use of that street. Counsel representing the defendants filed answers denying those allegations, and discovery work was carried forward. The plaintiffs voluntarily dismissed their lawsuit on the fourth day of March, 1975, at their own cost.

"28. Prior to the hearing of August 2, 1976, there were no complaints made to the governing body of Butler County, Kansas, or to the Plaintiff in regard to the use of explosive material in the quarry. Neither were there complaints of damage and destruction to water wells or any other structure. The only complaint previously lodged concerned dust from trucks and other vehicles using 21st Street.

"29. Few of the vehicles using 21st Street are owned, operated, or controlled by the George M. Myers Company. Most of the trucks hauling quarry products belong to quarry customers and not to George M. Myers Company.

"30. Commissioner Mauk did not consider the following aspects of the zoning matter at the time he voted on Plaintiff's application.

    a. The amount of rock available in the new location and its value;

    b. The best use of the property;

    c. Whether the real estate had gone up or down over the years;

    d. That this was the only quarry in Butler County with State approved aggregate;

    e. The cost to the county taxpayer to pay for county rock if the quarry was closed.

"31. The only economic aspect that Commissioner Mauk did consider was the loss of personal property revenue derived from the tax on quarry equipment and the loss of employment for quarry employees.

## "CONCLUSIONS OF LAW

"1. The Court has jurisdiction of the parties and the subject matter in this case, and venue is proper in Butler County, Kansas.

"2. The following principles of law enunciated in Gas Light Villa vs. City of Lansing, 213 Kan. 862, apply in this case.

(a) That the trial court's review of Board's action under K.S.A. 12-712 (K.S.A. 19-2913 for counties) is the reasonableness of the ordinance or action of the body.

(b) The mark of unreasonable action as contemplated in K.S.A. 12-712 (K.S.A. 19-2913 for counties) is when the action is so arbitrary it can be said it was taken without regard to the benefit or harm involved to the community at large, including all interested parties and was so wide of its mark, its unreasonableness lies outside the realm of fair debate.

(c) That there is a presumption that the governing body acted reasonably and it is incumbent upon those attacking its action to show unreasonableness.

(d) The reviewing Court may not substitute its judgment for that of the governing body and should not declare the action of the latter unreasonable, unless clearly compelled to do so by the evidence.

"3. That the principle of law cited in Arkenberg vs. City of Topeka, 197 Kan. 731, also applies as follows:

" 'Zoning is not to be based on a plebiscite of the neighbors. Their wishes are to be considered, but the final ruling is to be governed by the basic consideration of the benefit or harm involved to the community at large.'

"4.   There is no evidence to support the claims of Virgil Ralston that quarry operations damaged wells on his property.

"5.. Neither Plaintiff nor the George M. Myers Company has any legal obligation to maintain, improve, or otherwise care for 21st Street. Thus, any commission consideration of dust or other complaints concerning that road was improper.

"6.   Plaintiff's request for permission to use its reserves in order to continue the quarry operation will not cause any different environmental impact upon the surrounding property owners and residents than that which exists at the present time and has existed over several years.

"7.   The vote of Commissioner William D. Mauk, Sr., based upon his conversations with and the complaints by three individuals; and in the face of the overwhelming and credible evidence concerning the safe operation of the quarry and its economic benefit to the community at large, both in Butler County and the State of Kansas, was arbitrary and unreasonable and should therefore be set aside.

"8.   In making this ruling, I do not equate arbitrary actions with dishonest actions; and I reject the arguments made herein that Commissioner Mauk voted as he did to help the Plaintiff's competitor, Knebler Construction Company. The only evidence in this case pertaining to Commissioner Mauk's honesty was given by the county engineer who testified that he was an honest man.

"9.   I have previously ruled that the question of whether or not Commissioner Mauk violated the conflict of interest statute, K.S.A. 75-4301, et seq., is not an issue in this case.

"10.  Following Anderson vs. City of Parsons, 209 Kan. 337, 496 P.2d 1333, this Court disqualifies the vote of Commissioner William D. Mauk, Sr., and affirms the vote of the remaining commissioners, thus providing unanimous approval for Plaintiff's application.

"11. In accordance with the above stated findings of fact and conclusions of law, the Court orders that Plaintiff's application be and the same hereby is approved."

Intervenors claim that seven of the court's findings of fact are either erroneously based upon proffered evidence, or upon no evidence at all, and that there is no evidence supportive of those findings. We shall consider each of the challenged findings.

The first is finding 8(a). We find support for that statement in the summary of the testimony of Professor Lynn Woodward, included in the minutes of the Planning Board meeting of August 2.

The next finding challenged is 8(f). That the quarry is located in a sparsely populated area is shown by the photographs, and presumably is a fact of general knowledge in the area which could well be judicially noticed by the trial judge. K.S.A. 60-409(*b*)(3). Testimony at the planning board hearings included estimates of the thickness of the rock formation, the amount and type of explosives used, and the times blasting occurred. The aerial photographs disclosed the location of homes and the dis-

tance from both the existing and the proposed quarry area. We conclude that finding 8(f) is supported by the record.

Finding 8(g) is challenged. It was modified by the trial judge; the version finally adopted is taken almost verbatim from the minutes of the Planning Board meeting, and is amply supported by the record.

Finding 8(h)(3) deals with the loss of jobs for quarry employees and loss of support for their dependents. The minutes of Professor Woodward's testimony show that he stated in substance that every quarry employee supports three other persons and that 120 to 180 people are supported by the quarry. The minutes of Mr. Myers' testimony show that he said in substance that the present site would be quarried out in six months to two years; if the new site could not be used, the quarry would have to shut down. The record thus supports this finding.

Finding 8(n), concerning the testimony of Ralph Dawson, is next on appellants' list. The information that Dawson toured the area surrounding the quarry and was familiar with structures in that area is not specifically included in the minutes of the August 2 meeting of the Planning Board, at which meeting Dawson testified. The minutes do, however, support the balance of this finding of fact, and indicate that Dawson knew the size of the rock ledge being quarried, and in his opinion Myers was using only 10% of the amount of explosive needed to cause damage. It might be inferred that Dawson would need to be familiar with the area in order to be able to form the opinions expressed; in his proffered testimony, he indicated that he was very familiar with the operation, and that he had so testified before the Planning Board.

Finding 12 relates to the brand of explosive used, "Tovex," manufactured by Du Pont. The written reports of seismographic tests, submitted at the Planning Board hearing, list the explosive as Type: "ANFO Detaprimes." Type of Delay Employed: "MS-EBC Du Pont." We find no other information about the specific explosive used in the minutes, in the exhibits, or on the taped record of the September 7 meeting. The information contained in this finding is included in the proffer of Mr. Dawson's testimony; he testified that these facts were presented to the Planning Board during his testimony on August 2.

The last finding attacked is the last sentence of finding 15. The

minutes of Professor Woodward's testimony at the August 2 meeting indicate that he proposed a residential area be developed around the old quarry after the excavated area is filled with water, similar to "Briarcliff Lake Estates." He showed slides demonstrating how the area could be developed. The minutes support finding 15.

After a careful review we conclude that the findings challenged are substantially supported by the original minutes and record. The few deviations are not critical factual findings, and although erroneous are not of sufficient substance to constitute prejudicial or reversible error.

A district court reviewing a zoning decision of an administrative agency "may take additional evidence that is relevant to the limited issues of reasonableness and legality of the order appealed from." *International Villages, Inc., of Amer. v. Board of Comm'rs of Jefferson County,* 224 Kan. 654, 660, 585 P.2d 999 (1978). The rules of evidence contained in the code of civil procedure apply to district court review of a zoning ordinance. Records of prior proceedings and also relevant evidence not presented to the commission are admissible, subject to judicial discretion. *Keeney v. City of Overland Park,* 203 Kan. 389, 394, 454 P.2d 456 (1969). See also *Rydd v. State Board of Health,* 202 Kan. 721, 451 P.2d 239 (1969). Evidence repeating testimony given before the Planning Board which has been condensed into minutes presented to the county commissioners would be admissible both on the issue of reasonableness and because it was considered by the commissioners or was available to them.

Because the proffered evidence was admissible, appellant's claim of error is reduced to being precluded from cross-examining witnesses giving the proffered testimony. Control of the scope of cross-examination is subject to reasonable control by the trial court, and exercise of such control will not constitute reversible error, absent a showing of abuse resulting in prejudice. *Manley v. Rings,* 222 Kan. 258, 564 P.2d 482 (1977). Here appellant makes no claim of prejudice.

The primary issue on appeal is whether the trial court erred in its ultimate conclusion that Commissioner Mauk's vote was arbitrary and unreasonable and should be set aside, and that plaintiff's application for rezoning be approved.

This is not an appeal to the courts from the decision of an

administrative board; instead, it is a direct action challenging the reasonableness of the action taken by the local authority, the Board of County Commissioners. Such an action is specifically authorized by K.S.A. 19-2913, a part of the general county zoning law, which provides:

"That any and all acts and regulations provided for or authorized by this act shall be reasonable and any person having an interest in property affected may have the reasonableness of any such act or regulation determined by bringing an action against the county commissioners in the district court in the county in which any such township is situated."

*Highway Oil, Inc. v. City of Lenexa,* 219 Kan. 129, 547 P.2d 330 (1976), was an action commenced under K.S.A. 12-712, an act authorizing the bringing of an action in the district court to determine the reasonableness of city zoning ordinances or regulations. We discussed the rules governing the scope of judicial review of zoning matters in *Highway Oil,* and more recently in *Golden v. City of Overland Park,* 224 Kan. 591, 595-596, 584 P.2d 130 (1978). Concisely stated, the rules are these:

(1) The local zoning authority, and not the court, has the right to prescribe, change or refuse to change, zoning.

(2) The district court's power is limited to determining
(a) the lawfulness of the action taken, and
(b) the reasonableness of such action.

(3) There is a presumption that the zoning authority acted reasonably.

(4) The landowner has the burden of proving unreasonableness by a preponderance of the evidence.

(5) A court may not substitute its judgment for that of the administrative body, and should not declare the action unreasonable unless clearly compelled to do so by the evidence.

(6) Action is unreasonable when it is so arbitrary that it can be said it was taken without regard to the benefit or harm involved to the community at large, including all interested parties, and was so wide of the mark that its unreasonableness lies outside the realm of fair debate.

(7) Whether action is reasonable or not is a question of law, to be determined upon the basis of the facts which were presented to the zoning authority.

(8) An appellate court must make the same review of the zoning authority's action as did the district court.

In the case at hand, unanimous commission action was imposed through the protest procedure provided in K.S.A. 19-2920, which states:

"If . . . a protest against such amendment, supplement or change be filed in the office of the county clerk within fourteen (14) days after the date of the conclusion of the hearing duly signed and acknowledged by the owners of twenty percent (20%) or more of any property proposed to be rezoned, or by the owners of twenty percent (20%) of the total area, excepting public streets and ways which is located within one thousand (1,000) feet of the boundaries of the property proposed to be rezoned, such amendment shall not be passed except by unanimous vote of the board of county commissioners."

Does the unanimity requirement alter the scope of review? We hold that it does not. Whether zoning action is taken by one, three, or a dozen people sitting as a board, commission, or authority is immaterial; what is important and controlling under our law is that the action taken must not be arbitrary, capricious or unreasonable. Here the vote of one commissioner controlled the action of the commission; by the vote of Commissioner Mauk the motion to allow the change was defeated. The action of the commission as a whole—controlled by that single vote—was to deny the petition for change. The action of the commission must be reasonable, and is subject to review on that basis, whether the action resulted from a minority or a majority vote. Technically, the district court was reviewing the action of the commission, not the vote of a single commissioner; but the vote of that commissioner controlled the action of the commission; it *was* the action of the commission; and any error in terminology notwithstanding, it was the action of the *commission* which the court held to be arbitrary and unreasonable.

Was the action of the commission in denying the application unreasonable as a matter of law? Was it "so arbitrary that it can be said it was taken without regard to the benefit or harm involved to the community at large, including all interested parties"? Was it "so wide of the mark that its unreasonableness lies outside the realm of fair debate"? This is the critical issue.

The findings of the trial court disclose what evidence *was* considered and what evidence *was not* considered by the "commission" in denying the requested rezoning. These findings—20, 21, 22, 24, 30 and 31—are not challenged by appellants.

Considered were private and undisclosed ex parte statements of

three interested people, dust caused by traffic on a county road, loss of tax revenue, and loss of salaries. The minutes of the August 2 hearing were reviewed; there was no in-depth discussion of the evidence by the three commissioners, two of whom had attended the important August 2 hearing. Not considered were all of the exhibits introduced by the landowner, as well as all of the important matters deserving consideration listed in finding 30. The benefit or harm to a select few was considered; the benefit or harm to the people of Butler County, the "community at large," was ignored.

Appellants urge us to consider the criteria listed in *Golden,* in determining reasonableness of the commission's denial. The first two of these are the character of the neighborhood and the zoning and uses of nearby property. The property is located in the extreme southwest portion of Butler County. Surrounding properties are agricultural except for the existing quarry, which adjoins the proposed site. There are residences on some nearby properties; from the aerial photographs there appears to be an average of three or fewer homes on nearby sections. It would be impossible to locate a quarry anywhere in the state where all the surrounding properties were quarries. The surrounding land is not highly developed residential property; some of it is terraced, some farmed on the contour; obviously it is agricultural with a few scattered homes. The record indicates that one area has been platted; we are unable to find any concentration of building sites in the exhibits.

The third factor is suitability of the property for agricultural uses to which it is presently restricted. Testimony indicates it is unsuitable for some agricultural purposes due to outcroppings of rock. The highest and best use is undoubtedly for quarrying; the underlying rock is said to have an estimated value of $16,500,000.

Another important factor is the extent to which the requested zoning change will affect nearby property. This was considered only insofar as the ex parte complaints of three neighbors were concerned. The complaints were discredited by evidence at the hearing and were not found to be valid by the trial court. The requested zoning change will allow quarrying to continue; it will not cause any new or different impact upon properties nearby.

Another factor to be considered is the relative gain to the public health, safety and welfare accomplished by the denial of the

application, as compared to the hardship imposed on the landowner. If the application is denied, the quarry closes; the land will retain its agricultural value, and the value of the underlying rock will be lost. There is no evidence that public health, safety, and welfare will be promoted by denial of the application. On the other hand, there was an abundance of evidence as to the cost of importing approved aggregate into Butler County if this quarry is closed. This would also affect neighboring Sedgwick County, and state highway projects in the area. These matters affect the public welfare.

Further discussion would only belabor this opinion. It is apparent that only a few of the factors listed above were considered. The evidence supporting the granting of the application, as characterized by the trial judge, was overwhelming; the evidence in opposition to it was minimal. The trial court stated and properly applied the correct rules of law. We have carefully examined the entire record and we conclude that the able trial judge was correct in finding that the commission's action in denying rezoning was unreasonable as a matter of law. Other matters raised in the briefs have been considered, but discussion of them would not be of benefit.

The judgment is affirmed.

FROMME and HOLMES, JJ., not participating.