No. 61,608

M. B. Landau, *Appellant/Cross-Appellee*, v. City Council of City of Overland Park, and City of Overland Park, *Appellees/Cross-Appellants*.

(767 P.2d 1290)

Opinion filed January 20, 1989.

*Ron Bodinson,* of Shook, Hardy & Bacon, of Overland Park, argued the cause and was on the briefs for appellant.

*Neil R. Shortlidge,* of Freilich, Leitner, Carlisle & Shortlidge, of Overland Park, argued the cause, and *Robert J. Watson,* city attorney, and *Karen Arnold-Burger,* assistant city attorney, were with him on the briefs for appellees.

*James M. Kaup,* of Topeka, was on the *amicus curiae* brief for League of Kansas Municipalities.

The opinion of the court was delivered by

SIX, J.: The plaintiff, M. B. Landau, appeals the judgment granted to the City of Overland Park denying his rezoning request. The City cross-appeals the court's refusal to grant a motion in limine. The City contended in its unsuccessful motion that the trial court's review be limited to the administrative record presented to the City Council.

Landau contends: (1) The City Council's denial of his rezoning request was unreasonable because the City neither specifically enumerated and analyzed nor followed the factors set out in *Golden v. City of Overland Park,* 224 Kan. 591, 584 P.2d 130 (1978); (2) the trial court erred by excluding evidence of a successful zoning request which deviated from the master plan and was granted a year after the denial of Landau's application; and (3) the trial court erred by admitting evidence of an appraisal of Landau's property which was made a year after the City's denial of his application.

The City in its cross-appeal claims: (1) The trial court erred by receiving additional evidence rather than limiting its review to

the administrative record, and (2) its action denying the zoning request was reasonable when reviewed merely on the limited administrative record submitted to it.

We find no error and affirm.

## FACTS

M. B. Landau, a resident of Overland Park, has been a land developer for over 30 years. He has developed residential properties in Lenexa, Shawnee, and Overland Park. In late 1983, he purchased the property that is the subject of this litigation for $2.5 million. Landau testified that he paid fair market value. At the time he purchased the parcel, the entire 200 plus acres was zoned R-1 (single family residential). This property is located on the southwest corner of the intersection of 127th Street and Antioch Road in Overland Park. In 1985, Landau applied for rezoning of approximately 40 acres on the northeast corner of this tract of land. The land on the east side of Antioch Road was zoned for light industrial use and Landau's plan was to buffer the residential area on the west side of his tract with an eastern area of commercial and low density multi-family use. On the remaining property, Landau is developing 137 acres of single-family homes in the $200,000 to $300,000 price range and 20 acres of medium density development.

The subject property is located in an area known as the K-150 Corridor. At the time Landau made his rezoning request, the cities of Leawood, Olathe, and Overland Park, along with Johnson County, were conducting a joint study of this area in order to develop a long-range plan to ensure proper and efficient growth. Landau's rezoning request was put "on hold" for more than a year while the Planning Commission waited for the results and the approval of the K-150 Corridor Study. In the meantime, Landau proceeded with residential development.

The requested rezoning was finally taken up during the April 28, 1986, City Planning Commission meeting. Roger Peterson, Director of Planning and Research for the City of Overland Park, testified that Antioch Road was designated as a dividing line between industrial and commercial use on the east, and residential use on the west. The northeast and southeast corners of the intersection of 127th and Antioch were rezoned for commercial use. City policy called for a large area of low-density residential development to the west of Antioch. The Planning Com-

mission was concerned that, if allowed, Landau's commercial use on the southwest corner would cause a "domino" effect making it difficult for the City to keep other commercial developments out of the area. The Planning Commission also determined that there would be adequate commercial developments within one mile of the intersection to satisfy the needs of the area.

When asked if it would be feasible to develop the northeastern 16 acres of his tract into single- or multi-family residential, Landau testified at the district court level:

"No . . . it's single family. That topography next to industrial or commercial would be an absolute joke and nobody would finance it. Now, if I would go to cheap apartments and put them up there, it would nullify the value of the individual investment in these houses in the Fontainebleau subdivision, and I will not do anything to hurt my own customers."

Landau believed that, because the land from 127th Street down Antioch Road slopes rapidly, residential development would be difficult. He thought it would also be difficult to build any type of wall or landscaping to buffer the residential area from the industrial area across Antioch Road.

Landau was particularly concerned with the influence he perceived the Association for the Future Development of College Boulevard had over the planning and zoning decisions of the City. Members of this group spoke in opposition to the rezoning at both the Planning Commission and City Council meetings. These citizens lived over a mile from Landau's property. There was evidence presented that several members of the City Council had met with the Association in April of 1986 and discussed the proposed rezoning. Landau was not given notice of this meeting.

The Overland Park City Council entered its findings of fact and conclusions of law concerning the rezoning on December 8, 1986. Landau had testified on behalf of his plan and stated the following reasons why the City Council should grant the rezoning:

"1) the proposed zoning was the highest and best use of the property; 2) the proposed zoning was in conformance with what he considered to be the true intent of the Master Plan and the land use plan established for the area in the K-150 Corridor Study; 3) the landowner's willingness to restrict the floor area of the commercial development to 60,000 square feet; and 4) the landowner's agreement to develop owner-occupied, and not rental, multi-family units."

The City Council voted to deny the rezoning request, stating the following reasons for the denial:

"a) although extending the RP-3 designation to Antioch would be appropriate, the commercial use proposed by Rezoning No. 85-28 is inappropriate at this location;

"b) the proposed commercial zoning is at variance with the Master Plan and the future land use plan portion of the K-150 Corridor Study;

"c) the proposed commercial zoning would be in conflict with the Master Plan Community Issue to promote a large area of land to foster low-density residential development to the west; and

"d) adequate commercial developments are planned or proposed within approximately a one-mile radius of the site that should satisfy the market needs of the future population of this area."

Landau filed suit against the City, alleging that the City's decision was unreasonable, arbitrary, and capricious. The City moved in limine to limit the court's review of the rezoning denial to the administrative record without additional evidence. The City also requested the court to rule that discovery was unnecessary except to the extent that it related to the content of the administrative record.

The court declined to limit review to the administrative record. Discovery was limited only in deposing Council members. Landau could not inquire into their mental processes in reaching the rezoning decision. However, he was permitted to inquire as to the facts or factors that were considered.

The trial court affirmed the decision of the City Council, concluding that the Council acted in a reasonable manner and that the rezoning denial was supported by the evidence.

The City expressed its willingness to allow low density multiple-family use (garden apartments) at the site; consequently, the appeal focuses on the tract's northeastern 16 acres, which Landau planned to develop for commercial use.

## 1. THE *GOLDEN* FACTORS

Our leading case on the subject of rezoning is *Golden v. City of Overland Park,* 224 Kan. 591, 584 P.2d 130 (1978). In *Golden,* we enumerated eight factors "which it would be well for a zoning body to bear in mind when hearing requests for change." 224 Kan. at 598. These factors are:

(1) The character of the neighborhood.

(2) The zoning uses of nearby properties.

(3) The suitability of the property for the uses to which it is restricted.

(4) The extent to which the change will detrimentally affect nearby property.

(5) The length of time the property has been vacant as zoned.

(6) The gain to the public health, safety, and welfare by the possible diminution in value of the plaintiff's property as compared to the hardship imposed on the plaintiff if his requests were denied.

(7) The recommendations of a permanent or professional planning staff.

(8) The conformance of the requested change to the city's master or comprehensive plan. 224 Kan. at 598.

"The traditional tests of reasonableness were not abandoned but are enhanced by the eight factors which provide a reviewing court with a basis for testing the action of a governing body in a meaningful way." *Taco Bell v. City of Mission,* 234 Kan. 879, 887, 678 P.2d 133 (1984).

Landau asserts that the City is required to examine the *Golden* factors and to engage in an issue-oriented analysis of the rezoning request. The City argues that the analysis of the *Golden* factors is not mandated, but merely suggested for use in zoning decisions. We agree. Justice (now Chief Justice) Miller speaking for the court in *Golden* stated: "We have listed all of these various factors here *not as the exclusive factors to be considered in each zoning matter, but as suggested factors which may be important.* Other factors may and no doubt will be of importance in the individual case." (Emphasis added.) 224 Kan. at 599.

The *Golden* decision was cited in the City's findings of fact and conclusions of law. The Council stated that it had considered the testimony and documents presented in light of the factors set forth in *Golden.* The findings of fact and conclusions of law were not issued until six months after the City had made its decision and after Landau had filed his notice of appeal. The City, however, as reported in its council meeting minutes of June 16, 1986, did consider at least two of the *Golden* factors; *first,* the City's planning staff had recommended not to grant the rezoning, and *second,* the rezoning did not conform with the City's master plan. The minutes also mentioned that citizens in the area objected to the rezoning because they wished to keep the area

west of Antioch exclusively residential. The citizens' objections address *Golden* factors two and four: the zoning and uses of nearby property, and the extent to which change will detrimentally affect nearby property.

"Reasonableness remains the standard for review. K.S.A. 12-712, K.S.A. 19-2913 . . . [The] standard will be more readily, more effectively, and more uniformly applied if zoning bodies will place in their minutes a written order delineating the evidence and factors the board considered in arriving at its conclusion." *Golden,* 224 Kan. at 599.

Although the City Council would have presented a more sophisticated land use record for review had it specifically addressed the eight *Golden* factors in its decision-making process, we clearly characterized those factors as "suggestions." The minutes of the June 16, 1986, Overland Park City Council meeting delineate: (1) the reasons for the planning staff's denial recommendation, and (2) that the City Council's decision was based principally on the planning staff's recommendation. We are not persuaded that the City's decision was unreasonable merely because *Golden's* eight factors were not either more specifically enumerated or subjected to an issue-oriented analysis.

Landau contends that the City's denial of his rezoning request was unreasonable when tested against the eight *Golden* criteria. The scope of review in zoning cases has been discussed in several of our cases; for example:

" '(1) The local zoning authority, and not the court, has the right to prescribe, change or refuse to change, zoning.

" '(2) The district court's power is limited to determining (a) the lawfulness of the action taken, and (b) the reasonableness of such action.

" '(3) There is a presumption that the zoning authority acted reasonably.

" '(4) The landowner has the burden of proving unreasonableness by a preponderance of the evidence.

" '(5) A court may not substitute its judgment for that of the administrative body, and should not declare the action unreasonable unless clearly compelled to do so by the evidence.

" '(6) Action is unreasonable when it is so arbitrary that it can be said it was taken without regard to the benefit or harm involved to the community at large, including all interested parties, and was so wide of the mark that its unreasonableness lies outside the realm of fair debate.

" '(7) Whether action is reasonable or not is a question of law, to be determined upon the basis of the facts which were presented to the zoning authority.

" '(8) An appellate court must make the same review of the zoning authority's

action as did the district court.' " *Dings v. Phillips*, 237 Kan. 551, 552, 701 P.2d 961 (1985) (quoting *Combined Investment Co. v. Board of Butler County Comm'rs*, 227 Kan. 17, 28, 605 P.2d 533 [1980]).

Landau carries the burden of proving that the City's denial of his rezoning request was unreasonable. We embark on an analytical journey, pausing at each *Golden* factor way station, in reaching our determination that he did not carry the burden successfully. The journey, we hope, will serve as a traveler's aid to the bar, the bench, to cities and counties, and to landowners who contemplate an appellate trip with a future zoning request.

### The Character of the Neighborhood

At the time of Landau's zoning request, the area in question was essentially undeveloped. Future development plan maps of the City, as early as 1979, designated Landau's property as future residential development. The property to the east across Antioch was light industrial. Antioch was designated as a major thoroughfare. The property in question was zoned residential when Landau purchased it in 1983.

The members of the Association for the Future Development of College Boulevard have consistently voiced their desire that the City conform with the Master Plan as closely as possible. It is their view that West 127th Street be kept strictly residential.

At the time of the rezoning request, the June 16, 1986, City Council meeting minutes indicate that the neighborhood had not yet developed a "character." It was largely composed of vacant lots with some agricultural use. One City Council member objected to the denial because the Council's responsibility was not to protect zoning that was granted but might never be utilized. Landau, however, had already begun development of houses to the west of the 16 acres he sought to rezone commercial.

### The Zoning and Uses of Nearby Property

Major portions of nearby property were undeveloped at the time of Landau's request. The Future Development Plan map of Overland Park shows the property to the west of Landau's property was undeveloped with the exception of a low density residential area approximately one mile to the west on 127th Street. The areas to the north are primarily low to medium density residential, with an apartment complex under construction about one-half mile north on Antioch. The properties to the east and the south are vacant, designated as light industrial or

commercial. A mental health center is located one-half mile east on 127th Street. A large commercial area is planned at 135th Street (K-150) and Antioch Road.

Antioch Road represents a sharp transition from a light industrial/commercial area to an exclusively residential area.

### The Suitability of the Property for the
### Uses to which it is Restricted

Landau's testimony regarding the suitability of the northeast 16 acres of his parcel for residential use has been previously set out in this opinion.

Kevin Nunnick, a certified real estate appraiser, testified on behalf of the City before the trial court. According to Nunnick, a prudent developer of real estate would consider three factors when determining the highest and best use of a piece of property: (1) what uses are physically possible; (2) what uses are legally permissible; and (3) what uses are economically feasible.

Nunnick testified that given those three factors, the highest and best use for Landau's parcel was a combination of medium density and single-family residential use. A prudent investor who wanted to develop nonresidential uses on property designated residential would make any purchase of such property contingent on rezoning. Nunnick also testified that, based on comparable sales in Overland Park, the approximate value of Landau's property as zoned for residential use was $12,500 an acre (the price Landau paid for the property). Nunnick said commercial properties usually sold for between $40,000 and $80,000 an acre.

Landau's site plan called for multiple-family residential development along Antioch to the south of his proposed commercial development. He neither explained why it would not be feasible to extend the multiple-family use north to the intersection of 127th Street nor why the multiple-family development would be an adequate buffer in the southeast corner of the property, but not the northeast corner.

Landau testified that the assessment required for the improvement of Antioch Road rendered residential development economically unfeasible at the intersection. Nunnick testified that, given the price Landau paid for the land, such an assessment for road improvements would not preclude residential development and that costs could be spread across the entire subdivision.

Richard Kellenberg, a planning consultant for several Johnson County communities, described other areas of Johnson County where property had been successfully developed for residential use next to business or industrial parks. He said that "business park" is a more appropriate designation for "light industrial" zoning. He also testified that a business park is probably more compatible with residential than commercial or retail use in terms of traffic and commotion.

Roger Peterson, Director of Planning and Research for Overland Park, testified, in part, as follows:

"Q. Mr. Peterson, based upon your professional education, training and experience, and the site planning opportunity present on both the east and west sides of Antioch, south of 127th Street, and the plans that have, in fact, been approved for the southeast corner of 127th & Antioch, do you have an opinion as to whether residential uses on the Landau property could be effectively buffered from the industrial, commercial on the east?

"A. It's my opinion that they could be effectively buffered and operated at that location.

"Q. Would the topography of the Landau property preclude the use of any of the site planning techniques to which you had reference?

"A. No. In fact, the slope in many cases can be used to your advantage in achieving some variation and changes in the building designs, etcetera."

The evidence weighs in favor of residential use as the most suitable use for the subject property.

### The Extent to Which The Change
### Will Detrimentally Affect Nearby Property

Landau argues that the City offered no evidence that the rezoning would be detrimental to nearby property. Landau misidentifies the burden of proof in land use litigation. It is Landau who carries the burden of proving the unreasonableness of the City's action. The City was not required to produce such evidence. Landau contends that the commercial development he proposes would be beneficial to the residential property to the west as it would provide a buffer between the residential and light industrial areas. His motivation in planning this area was to protect the subdivision he was developing to the west.

Annabeth Surbaugh spoke before the City Council, representing the Association for the Future Development of College Boulevard. She stated that the group opposed commercial development west of Antioch and that the reasons for the opposi-

tion had been stated previously. It appears that these reasons were not made clear to Landau at the time of the City Council decision; however, he learned of those reasons prior to his appeal to the district court.

At the May 5, 1986, City Council meeting, the Council considered the "Fishman" application, a rezoning request for the *northwest* corner of 127th Street and Antioch. Surbaugh also appeared at this meeting and stated the following reasons for the Association's position:

"(1) any commercial west of Antioch sets a precedent for commercial along 127th Street. (2) It does not meet with the spirit of the Master Plan (the Master Plan shows 127th Street to be residential). (3) Two schools are proposed near 127th and Switzer and the committee would like to keep the school and commercial traffic as separate as possible as well as protect walkers. (4) The residents and the committee believe that commercialization at 127th Street would cause the property values to decline."

These objections appear to be the "previously stated" objections that Surbaugh referred to at the June 16 meeting.

The Fishman and Landau applications were perceived by the City Council as presenting essentially identical issues. Both applications were denied.

### The Length of Time the Subject Property Has Remained Vacant As Zoned

The area of Overland Park in which Landau's property is located has only just begun development. Much of the surrounding property is also vacant. This factor is not of primary importance in determining the reasonableness of Landau's rezoning decision.

### The Gain to the Public Health, Safety, and Welfare by the Possible Diminution in Value of the Plaintiff's Property as Compared to the Hardship Imposed on the Plaintiff If His Requests Were Denied.

Nunnick, who appears from a review of the record to be a highly qualified real estate appraiser, testified that the property was worth $12,500 an acre as zoned, the price Landau paid for the property. Landau has failed to show that the denial of his request imposed any undue hardship upon him.

The City Council indicated its willingness to compromise by rezoning the area for medium density use if Landau would refile his request, making the appropriate modifications.

### Recommendation of Permanent or Professional Staff

The Planning Commission, based on the staff recommendation, voted unanimously not to recommend the rezoning to the City Council. The staff had previously recommended against the Fishman rezoning for a shopping center on the northwest corner of 127th and Antioch.

The staff recommended denial of the rezoning because Landau's proposed commercial use was at variance with both the City's Comprehensive Plan and the K-150 Corridor Study. The staff also mentioned: (1) the desired preservation of a large area of purely residential use west of Antioch, and (2) the existence of sufficient planned retail development located to service the needs of the residential area.

The staff determination of sufficient commercial development was analyzed by methods set out in the Guide to Shopping Center Development published by the Urban Land Institute.

### The Conformance of the Requested Change to the City's Master or Comprehensive Plan

The City's master plan has consistently designated Landau's property for residential use. Antioch Road was designated as the eastern border for a large residential area to the west.

The K-150 Corridor Study was approved by the City Council in April of 1986. Based on this study, the City changed its master plan to include a strip of multi-family residential use along the west side of Antioch Road in the vicinity of 127th Street to buffer industrial use from single-family residential use. Based on the K-150 study, commercial zoning was at variance with the master plan; multi-family use was not.

The zoning authority is presumed to have acted reasonably. The landowner must prove the City's decision to be unreasonable.

Our analytical journey, pausing momentarily at each of the eight *Golden* criteria, persuades us that the City Council was not unreasonable in denying Landau's requested 16 acres of commercial zoning.

### 2. EXCLUDING EVIDENCE OF ANOTHER ZONING REQUEST

At trial, Landau attempted to present evidence of a rezoning request for a parcel near 123rd and Metcalf, which was granted

by the City more than a year after his request was denied. Landau contends that the later zoning request was factually similar to his request and was relevant evidence to the reasonableness of the City Council's decision. The standards for admitting new evidence in zoning appeals to the district court were well stated in *Keeney v. City of Overland Park*, 203 Kan. 389, 394, 454 P.2d 456 (1969):

"Parties attacking the reasonableness of an ordinance should not be precluded from the presentation of relevant evidence showing unreasonableness, even though such evidence was not presented to the governing body. This is not meant to imply that the hearing in district court should be a retrial on the merits of the zoning application, irrespective of whether or not a record was made of the city council's proceedings; neither does it imply that a party may lie in wait and ambush the other side at the district court hearing. The district judge remains armed with his usual discretion in admitting or rejecting evidence, and his rulings will not be disturbed unless substantial rights of a party are thereby affected."

Landau was able to present evidence of other rezonings by the City Council that were not in compliance with the master plan: two parcels on the east side of 127th and Antioch that were rezoned for commercial use, and a parcel at the intersection of 127th and Pflumm, which was rezoned to commercial use. The Pflumm rezoning occurred six months after the denial of Landau's rezoning and was within the same large residential area which the City sought to protect by denying the Landau rezoning request.

Although the trial court could have admitted the evidence of rezoning at 123rd and Metcalf, it clearly had the discretion to exclude it. The Metcalf rezoning occurred in a completely different residential area over a year after Landau's application was denied. There were factual similarities and factual differences between the Metcalf rezoning request and Landau's. Landau was able to present evidence of other rezonings which were at variance with the master plan. It was not an abuse of discretion to exclude the Metcalf evidence.

### 3. THE CITY'S APPRAISAL OF LANDAU'S PROPERTY

Landau argues that Kevin Nunnick's testimony on the value of Landau's property should have been excluded. Landau contends that Nunnick's appraisal was not admissible because (1) it was not relevant to the issue of reasonableness and (2) the City, although able to do so, did not present it to the Council prior to the zoning denial.

The City, in its unsuccessful motion in limine, urged the trial court to exclude all evidence not presented to the City Council. Landau opposed the City's motion. Landau, as a trial court litigant, wanted to allow in additional evidence. On appeal, his position shifts; here, he seeks to keep such evidence out. The City did not hire Nunnick until May 1987, after its motion in limine had been denied. Nunnick's appraisal was based on land values at the time Landau purchased the property and at the time the City Council denied Landau's rezoning application.

Landau argues that: (1) the evidence could have been produced by the City at the Council meeting and (2) because the City has not justified its failure to do so, the trial court cannot now receive it. We are not persuaded by the argument. Landau also contends that Nunnick's testimony had no bearing on the City's decision and, therefore, cannot be used to support the decision as a reasonable one.

In our view, Landau's reasoning lacks merit. His view highlights our concern for the smaller and mid-sized Kansas communities. Landau's view would place an undue burden on zoning bodies to produce expert testimony at hearings on the most routine zoning changes in anticipation of the applicant's future lawsuit.

Nunnick's testimony was relevant to the issue of reasonableness. It was helpful in an analysis of the suitability of the property for the uses to which it has been restricted. The testimony also had relevance to the issue of whether the denial of the rezoning either decreased the value of Landau's property or placed any undue hardship upon him.

Landau contends that Nunnick's testimony constituted "piecemeal" production of evidence, a concept this court has previously found unacceptable. He relies upon *International Villages, Inc., of Amer. v. Board of Comm'rs of Jefferson County*, 224 Kan. 654, 585 P.2d 999 (1978), and *Olathe Hospital Foundation, Inc. v. Extendicare, Inc.*, 217 Kan. 546, 539 P.2d 1 (1975). In *Olathe Hospital*, we found that the proffered testimony was an attempt to retry the merits of the application and that it did not go to the issue of the arbitrariness of the administrative agency's decision. 217 Kan. at 561. In *International Villages*, we said: "The trial court may take additional evidence

that is relevant to the limited issues of reasonableness and legality of the order appealed from." 224 Kan. at 660.

The trial court did not err by allowing Nunnick to testify.

## 4. THE CITY'S CROSS-APPEAL: SHOULD THE RECORD BE LIMITED?

The cross-appeal arises from the conflict between the principles of zoning law developed in *Bodine v. City of Overland Park*, 198 Kan. 371, 424 P.2d 513 (1967), and *Keeney v. City of Overland Park*, 203 Kan. 389, 454 P.2d 456 (1969), and the recharacterization in *Golden* of specific tract rezonings as quasi-judicial actions. *Golden* did not overrule the two earlier opinions. We are now called upon to decide whether it should have. The City is supported by the League of Kansas Municipalities, *amicus curiae*, in advocating that *Bodine* and *Keeney* should be overruled. We decline to do so. We do not agree with the *amicus* argument that the current process will lead to a "duplication of effort that is wasteful of the public's dollar." On the contrary, we are mindful of the perceived economic impact on Kansas communities were we to adopt the *amicus* view.

### Kansas Zoning

The standard of review of rezoning decisions turns on the reasonableness of the City's determination. The *Bodine* and *Keeney* decisions established that, when a rezoning decision is on review before the trial court, additional evidence may be considered. The additional evidence must meet the requirement of relevancy as to the issue of reasonableness. The trial court was definitely not to retry the case on the merits of the application. Prior to *Golden,* this court stated:

"[T]he governing body has the right to prescribe zoning, the right to change zoning and the right to refuse to change zoning. . . . There is a presumption that the governing body acted reasonably and it is incumbent upon those attacking its action to show the unreasonableness thereof." *Arkenberg v. City of Topeka,* 197 Kan. 731, 734-35, 421 P.2d 213 (1966).

The *Arkenberg* view conformed with the majority of jurisdictions which consider acts of rezoning to be legislative in character. Because of the legislative character, rezoning decisions are given much deference and are only overturned on a showing of clear error or abuse. 2 Rathkopf, The Law of Zoning and Planning § 27A.04 (4th ed. 1988).

We changed our characterization of specific tract rezoning in 1978. In *Golden,* we stated:

"A city, in enacting a general zoning ordinance, or a planning commission, in exercising its primary and principal function under K.S.A. 12-704 in adopting and in annually reviewing a comprehensive plan for development of a city, is exercising strictly legislative functions. When, however, the focus shifts from the entire city to one specific tract of land for which a zoning change is urged, the function becomes more quasi-judicial than legislative." *Golden,* 224 Kan. at 597.

We suggested that each zoning body enter a written order summarizing the evidence and stating the factors it considered in reaching its decision. A simple yes or no vote did not give a reviewing court any clue to the reasonableness of the zoning decision. We then listed the eight *Golden* factors. We reiterated that reasonableness is still the standard for review but that the standard is better applied if reviewing courts have a record to act upon. 224 Kan. at 599. We did not, in *Golden,* specifically address the issue of what evidence could be considered by a reviewing court in determining the reasonableness of the zoning decision.

In *Combined Investment Co. v. Board of Butler County Comm'rs,* 227 Kan. 17, 27, 605 P.2d 533 (1980), we indicated that additional evidence, as established by *Keeney,* could still be considered in rezoning reviews. We said that a review of a rezoning is not an appeal but is a direct action challenging the reasonableness of the decision of the local authority. 227 Kan. at 28. Although *Combined Investment* appeared to retreat from the quasi-judicial characterization set out in *Golden,* the court did consider the eight *Golden* criteria.

In the same year *Combined Investment* was filed, we also decided *Bolser v. Zoning Board for Aubry Township,* 228 Kan. 6, 612 P.2d 563 (1980). In *Bolser,* we were called upon to determine the applicable statute of limitations for challenges to rezoning decisions. The Court of Appeals, reasoning that such actions were independent suits, applied a five-year statute of limitations. We summarized the zoning case law in Kansas and stated:

"This evolutionary process has resulted in zoning disputes arising from the zoning of particular tracts being considered quasi-judicial decisions which are subject to judicial review under the same rules applicable to appeals from decisions of administrative agencies while operating in a quasi-judicial capacity." 228 Kan. at 12.

We held that rezoning reviews were not independent causes of

action. The 30-day statute of limitations that applies to judicial review of administrative actions is the appropriate limitation for actions challenging rezoning decisions.

The 30-day limitation was subsequently added to the applicable statutes by the legislature. Such actions are authorized by K.S.A. 12-712, where the rezoning is by a city, and by K.S.A. 19-2913 and 19-2926, where the rezoning is by a county.

## Administrative Appeals

The *Bodine*, 198 Kan. 371, and *Keeney*, 203 Kan. 389, concept of allowing additional evidence in the trial court is consistent with cases involving review of administrative actions. *Rydd v. State Board of Health*, 202 Kan. 721, 732, 451 P.2d 239 (1969).

In both *Rydd* and *Keeney*, this court called upon the legislature to provide more uniformity for the review of administrative decisions. See 203 Kan. at 395; 202 Kan. at 731-32. The legislature began to address this problem when it enacted the Act for Judicial Review and Civil Enforcement of Agency Actions (the Act), K.S.A. 77-601 *et seq.* The Act specifically excludes municipal and county actions and, therefore, would exclude review of rezoning decisions. K.S.A. 77-602(a) and (k). (The definition of "state agency" does not include "any political or taxing subdivision of the state.")

K.S.A. 1987 Supp. 77-618 provides that judicial review of disputed facts shall be confined to the record except where additional evidence is authorized by the Act or where certain agency actions are subject to de novo review. K.S.A. 77-619 provides for additional evidence in certain situations.

Adopting the K.S.A. 1987 Supp. 77-618 standard for the review of zoning decisions would perhaps have a salutary effect on the perceived confusion that has arisen in such cases since the *Golden* decision. See Davis, *Survey of Kansas Law: Real Property*, 32 Kan. L. Rev. 773 (1984); Thompson, *Dealing with Bids in Zone Hearings: A Golden Opportunity*, 51 J.K.B.A. 277 (1982); and Comment, *Rezoning in Kansas: Legislation, Adjudication, or Confusion*, 30 Kan. L. Rev. 571 (1982). The trial court would have to determine reasonableness based on the record of the zoning hearing, but could hear additional evidence on claims of bias or procedural errors.

We must always pause with caution whenever we approach legislative policy. The Act adopted in 1984 specifically excludes

appeals from municipal and county zoning decisions. Our shift in *Golden,* to the quasi-judicial concept for specific tract rezoning, has been in place since 1978. We must not judicially trespass on legislative territory. If the 77-618 and -619 standards are to be applied to appeals of rezoning decisions, the application must be effected by the legislature.

The characterization of rezoning as a quasi-judicial act has been adopted in the Model Land Dev. Code § 2-312 (1976), and endorsed in the report by the American Bar Association Advisory Commission on Housing and Urban Growth entitled Housing for All Under Law 280 (1978).

Our standard of review is reasonableness. In our view cities and counties in Kansas are entitled to determine how they are to be zoned or rezoned. Elected officials are closer to the electorate than the courts and, consequently, are more reflective of the community's perception of its image. No court should substitute its judgment for the judgment of the elected governing body merely on the basis of a differing opinion as to what is a better policy in a specific zoning situation.

We will rely on the good judgment of the trial court to determine whether the specific tract zoning decision appealed arrives for review accompanied by an adequate record. If, in the view of the trial court, the findings of fact and conclusions of law are deficient under *Golden* and inadequate for a "reasonableness" determination, the trial court may, in exercising its discretion, select the alternative of remanding the case to the local governing authority for further findings and conclusions.

This procedure has been regarded favorably by commentators. "A remand to the agency to consider the evidence would preserve judicial resources and protect the autonomy of the agency." Ainsworth & Shapiro, *Rethinking Kansas Administrative Procedure,* 28 Kan. L. Rev. 419, 445 (1980). The trial court is not to conduct its own review of the evidence.

The City in its cross-appeal requests us to review the reasonableness of its denial of Landau's rezoning request on the record presented to the City Council. We need not do so. We have held the trial court did not err in relying on *Keeney,* 203 Kan. 389.

Affirmed.