No. 48,159

JOSEPH W. MANLEY and SUE ELLEN MANLEY, *Appellants*, v. CHARLES A. RINGS, *Appellee.*

(564 P.2d 482)

Opinion filed May 14, 1977.

*Frank Covell*, of Covell & Katz, Chartered, of Mission, argued the cause, and *Richard B. Katz*, of the same firm, was with him on the brief for the appellants.

*Clifford T. Mueller*, of Rushfelt, Mueller, Lamar & Druten, of Prairie Village, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Plaintiffs, Joseph W. and Sue Ellen Manley, appeal from a defendant's verdict in a negligence action arising out of a collision at a controlled intersection in the city of Mission, Johnson County, Kansas.

The collision occurred where U.S. 50 Highway intersects Nall Avenue. At this location both the highway and the avenue are four lane trafficways. Each four lane trafficway is divided by a median strip. As these trafficways approach the intersection they widen to provide extra inside turn lanes. Protected left turns are permitted and controlled by separate traffic lights. Through traffic on both trafficways is controlled by additional lights. The sequence for lights on U.S. 50 Highway is as follows: Red lights stop all traffic. When the protected left turn green lights come on vehicles in the turn lanes proceed to make left turns in the intersection in front of the through traffic lanes. Next, the protected left turn green lights change to yellow and then to red. This stops traffic from making additional left turns at this intersection.

The red lights holding back through traffic on U.S. 50 Highway then change to green, allowing through traffic to proceed.

There are two turn lanes for traffic heading west on U.S. 50 Highway intending to turn south on Nall Avenue. Traffic in the outside turn lane swings wide in front of the through traffic vehicles waiting to proceed east on U.S. 50 Highway. The traffic from this outside turn lane then enters the outside traffic lane on Nall Avenue and proceeds south. Traffic in the inside turn lane makes a shorter circle in front of through traffic vehicles and enters the inside traffic lane on Nall Avenue and proceeds south. Generally there is heavy traffic at this intersection.

Prior to the collision the defendant, Charles A. Rings, was heading west on U.S. 50 Highway and desired to turn south on Nall Avenue. He stopped in the outside turn lane on U.S. 50 Highway facing a red light. He testified he adjusted the air conditioner on his car and when he looked up the protected left turn light was green so he proceeded into the intersection, made a wide turn, and was going south in the outside lane of Nall Avenue when his car was hit broadside by plaintiffs' car.

The plaintiffs testified they were traveling east on U.S. 50 Highway in the outside through traffic lane at a speed of 30 to 35 miles per hour. As they approached the intersection the red light which controlled their lane turned to green and they proceeded into the intersection without stopping. Their car collided with defendant's car a few feet after they entered the intersection. There were two other cars to plaintiffs' left that had stopped for red lights. One was waiting to make a left turn intending to go north on Nall Avenue and the other was in the inside through lane waiting to proceed straight east. The driver in the latter car started up but saw the defendant's car in time to stop and allow the defendant to proceed ahead of him. The plaintiffs' visions were blocked by this other car and they did not see defendant's car until shortly before impact. Serious injuries resulted.

Plaintiffs contend that a new trial should be ordered because of two alleged trial errors. The first concerns the limitation on examination of the defendant when called as a witness by the plaintiffs.

Plaintiffs' examination of the defendant, according to defendant's counsel, covers 26 pages of the trial transcript. Under examination by counsel for plaintiffs defendant testified in detail

concerning the route he had taken, the lights at this intersection, the time taken in adjusting his air conditioner, the number and location of other vehicles at the intersection, the color of the protected left turn light when he proceeded into the intersection, the speed of his vehicle and the point where he saw plaintiffs' vehicle for the first time.

The limitation on examination complained of by plaintiffs, with Mr. Covell inquiring for plaintiffs, appears as follows:

"*Question:* [By Mr. Covell] And you were, I believe you said something about being more concerned with the other traffic that was approaching rather than watching your speed? Was that your statement?

"Mr Mueller: If the Court please, that isn't as I recall his testimony. I think he said normally when he made his turn, he didn't watch his speedometer because he was more concerned about traffic conditions.

"The Court: Objection sustained. I think that that point—that comes under the heading of cross-examination of a witness, whom you called to examine directly, counselor.

"Mr Covell: I understand, Your Honor, and I am just trying to reconstruct there what I thought I understood the testimony to be.

"*Question:* (By Mr. Covell) Now, just trying to clarify this point. I am trying to determine whether or not you stated that you were concerned with the traffic in the intersection, which is why you didn't notice the speed. Is that—

"Mr. Mueller: If the Court please, his testimony has been given. The jury has had an opportunity to hear it. I think counsel is simply trying to get an answer he wants and is, in effect, cross-examining the witness.

"The Court: Sustained.

"*Question:* (By Mr. Covell) Why was it you didn't see the other car or other traffic in the intersection immediately prior to the collision?

"Mr Mueller: What other car? I object to the form of this question. There has been no testimony—

"Mr. Covell: The other car, the collision.

"The Court: Objection sustained. You have examined him in some detail on what he did or did not see in the way of other traffic on the other side of the intersection. Now, you are trying to cross-examine him, counsel, and you can't do that at this point.

"*Question:* (By Mr. Covell) All right. One last question. You explained to Officer Birmingham what happened, as I understood you to say.

"*Answer:* He took my statement, yes.

"*Question:* And did he tell you that you were at fault?

"Mr. Mueller: If the Court please, this is exactly why we have these twelve good people here, is to determine—

"The Court: Objection sustained. The jury will disregard the last question and/or comment, however you wish to term it.

"Mr. Covell: No further questions."

The thrust of plaintiffs' argument on appeal is that the trial

court refused to allow plaintiffs to cross-examine the adverse party called by them as a witness. From the court's remarks made in limiting the cross-examination the court apparently was unaware of the provisions of K.S.A. 60-243 (b).

The statute says:

". . . A party may call an adverse party . . . and interrogate him by leading questions and contradict him and impeach him in all respects as if he had been called by the adverse party, and the witness thus called may be contradicted and impeached by or on behalf of the adverse party also, and may be cross-examined by the adverse party only upon the subject matter of his examination in chief."

This statute, which has been in effect since January 1, 1964, modified the rule in effect prior to 1964 which limited impeachment of one's own witness. The present statute recognizes the necessity of proving a case by any witness available to a party. Witnesses may be unwilling or hostile to the person calling them. The statute affords some protection to a party who calls an unwilling or hostile adverse party in an effort to establish his case.

In the author's commentary in Gard, Kansas Code of Civil Procedure, K.S.A. 60-243 (b), p. 211, it is said this subsection should be considered "in light of" K.S.A. 60-420, "as the two go together." K.S.A. 60-420 provides that for the purpose of impairing or supporting the credibility of a witness, any party including the party calling the witness may examine the witness and introduce extrinsic evidence concerning any conduct by him or her and any other matters relevant upon the issues of credibility.

In Gard, Kansas Code of Civil Procedure, in the author's commentary on K.S.A. 60-420, p. 390, Judge Gard states:

". . . The right to impeach one's own witness, in the interest of the ends of justice and adequate inquiry into the facts, is now stated as the rule rather than the exception, subject to the discretionary control of the trial court as provided in section 60-445. Here, as in a number of other instances in this article, the doubts are resolved in favor of rather than against admissibility of information which would go to the real weight of the witness' testimony. The witness is truly made the witness of the court rather than a mouthpiece to be charged to the account of the party producing him."

Generally the relevancy of testimony elicited by a party from any witness and the scope of both direct and cross-examination of that witness is subject to reasonable control by the trial court. Exercise of reasonable control by the court will not constitute reversible error absent a showing of abuse resulting in prejudice.

See *Karrigan v. Nazareth Convent & Academy, Inc.*, 212 Kan. 44, 48, 510 P. 2d 190, and *Frame, Administrator v. Bauman*, 202 Kan. 461, 465, 449 P. 2d 525. See also K.S.A. 60-405 as to the effect of erroneous exclusion of evidence.

Under K.S.A. 60-243 (*b*) a party has a right to call an adverse party and interrogate him by leading questions, and the examining party may contradict and impeach such adverse party by cross-examination or otherwise, subject to reasonable control by the trial court.

The defendant-appellee argues that his objections to the questions in the present case were that the questions by plaintiffs' counsel contained incorrect assumptions as to defendant's prior testimony and were unduly repetitious. Therefore, although the court did imply that cross-examination of the witness was improper and further cross-examination would not be permitted the real reasons for sustaining the objections were those given when the objections were made by defendant.

We have carefully examined the record covering the examination of the defendant by counsel for plaintiffs. The questions to which objections were sustained were largely repetitious. The purpose of this particular line of questions is not apparent in the record. Counsel, after posing the questions, terminated his examination of the adverse witness without making known the substance of the evidence he expected to establish by his questions as required by K.S.A. 60-243 (*c*). In the present case, assuming the court did unduly restrict examination under a mistaken belief that the party calling an adverse party was not permitted to interrogate with leading questions or impeach the witness, counsel for plaintiffs wholly failed to call the statute (K.S.A. 60-243 [*b*]) to the attention of the trial judge. In this he failed to fulfill his obligation as an officer of the court.

In addition, three witnesses other than defendant, who were at or near the intersection when the collision occurred, testified for plaintiffs. These included both Mr. and Mrs. Manley and a Mr. Pike who had stopped in the left turn lane to the left of the Manley vehicle. Regardless of whether the court may have unduly restricted the examination of the defendant it does not appear that appellants' rights were prejudicially affected thereby. Accordingly we apply the harmless error rule as set out in K.S.A. 60-2105.

As the final point on appeal appellants question the sufficiency of the instructions given by the trial court affecting the rights of Sue Ellen Manley, a passenger in the Manley vehicle.

At the close of evidence the court ruled that the passenger, Sue Ellen Manley, as a matter of law was not guilty of contributory negligence. The question of her possible negligence was taken from the jury. The instructions given by the trial court bearing upon her right to recover were as follows:

"The plaintiffs, Joseph W. Manley and Sue Ellen Manley, claim that they sustained injuries and damages caused by one or more of the following acts of negligence of the defendant, Charles A. Rings:

"a. In failing to keep a proper lookout.

"b. In failing to keep his vehicle under proper control.

"c. In failing to yield the right of way.

"d. In failing to obey a traffic signal.

"The burden of proof is upon the plaintiffs to prove that the defendant was negligent in one or more of the particulars alleged and that the defendant's negligence was a direct cause of the plaintiffs' injuries and damages.

"The defendant generally denies the negligence claimed by the plaintiffs. He denies that any negligence by him directly caused any injuries or damages to said plaintiffs. He further denies the nature and extent of the injuries and damages claimed by the respective plaintiffs.

. . . . . . . . . . . . . . . . . .

"You are further instructed that any negligence on the part of Joseph Manley is not chargeable to Sue Ellen Manley and will not bar a recovery for injuries and damages sustained by her as a direct result of negligence by the defendant, Charles Rings.

. . . . . . . . . . . . . . . . . .

"As to the claim of plaintiff, Sue Ellen Manley, if you find from all of the evidence that she has met the burden of proof on each of the issues concerning which the burden of proof rested upon her, then you should return a verdict in favor of this plaintiff, Sue Ellen Manley.

"If, on the other hand, you find that the plaintiff, Sue Ellen Manley, has failed to meet the burden of proof on any of the issues concerning which the burden of proof rested upon her, then you should return a verdict in favor of the defendant, Charles Rings."

The balance of the instructions appear to be complete and follow those suggested by the Committee on Pattern Jury Instructions of the Kansas District Judges Association (PIK Civil).

Plaintiffs argue that the court should have instructed that Sue Ellen Manley could not be found guilty of contributory negligence. They further contend that the last two paragraphs quoted above were confusing and complex when considered with the

other instructions relating to recovery by the driver, Joseph W. Manley.

Considering the instructions as a whole we see no cause for reversal. When a claim by the driver and a claim by his passenger have to be submitted to a jury separate issues are involved and complexity in the instructions is unavoidable. The instructions given did not include any reference to negligence by Sue Ellen Manley or imply that defendant had such a defense against her. To have given the instruction orally requested by plaintiffs would have unduly emphasized and repeated what was contained in the instructions given.

The judgment is affirmed.