No. 60,773

CHARLES R. STICKNEY, *Appellant,* v. THE WESLEY MEDICAL
CENTER, A Corporation, and RON MORFORD, M.D., *Appellees.*
(768 P.2d 253)

Opinion filed January 20, 1989.

*William L. Fry,* of Fry, Reynolds & Reeves, P.A., of Wichita, argued the cause and was on the brief for appellant.

*Carl L. Wagner,* of Boyer, Donaldson & Stewart, of Wichita, argued the cause and was on the brief for appellee The Wesley Medical Center.

*Timothy B. Mustaine,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause and was on the brief for appellee Ron Morford, M.D.

The opinion of the court was delivered by

HOLMES, J.: Charles R. Stickney, the plaintiff in a medical malpractice action, appeals from a jury verdict finding that neither of the defendants committed medical malpractice or was negligent in the treatment of the plaintiff. The Court of Appeals, in an unpublished opinion filed July 15, 1988, reversed the judgment and ordered a new trial on the basis that the admission of collateral source benefits evidence was inherently prejudicial. The Court of Appeals did not address the other issues asserted by Mr. Stickney in his appeal. We granted petitions for review filed by The Wesley Medical Center (Wesley) and Ron Morford, M.D., the two original defendants.

On September 30, 1983, at about 3:30 a.m., Charles R. Stickney was involved in an auto accident in Wichita while en route to work. He was transported by ambulance to Wesley. Ambulance personnel had placed Stickney on a spine board and had protected his neck against movement with a cervical collar and foam

wedges. These precautions were standard procedure routinely undertaken with victims of automobile accidents. Stickney and the spine board were transferred from the ambulance to a hospital gurney at Wesley and wheeled to its emergency room.

Upon Stickney's arrival at the emergency room, Jeanmarie Epperly, a nurse assistant, and Dr. Ron Morford, the emergency room physician, attended to the plaintiff. Stickney did not report any neck pain or tenderness, and neither Epperly nor Morford, during their initial examinations of Stickney, observed any other signs normally associated with neck injuries.

Dr. Morford sent Stickney to the x-ray lab for the purpose of obtaining x-rays of his chest and left elbow. Stickney was still confined to the spine board with his neck protected by the cervical collar and foam restraints. During this period Stickney's wife and daughter arrived at Wesley. Upon his return from x-ray, Stickney was asked to sit up or stand up so the spine board could be removed from the gurney and returned to the ambulance personnel. He sat up and put his legs over the side of the gurney. Epperly testified that after 10 to 15 seconds Stickney insisted on standing up, even though she had told him to wait two to three minutes before he stood up. His daughter testified that Stickney slid off the side of the gurney toward the floor, his head slumping forward, and that her mother blocked his fall with her arm. Stickney broke out in a sweat, appeared to be short of breath, and complained of dizziness, chest pain, and neck pain. Epperly testified that she held Stickney's arm while calling for help, that he was laid back down on the gurney, and that he did not fall to the floor.

After Stickney's condition stabilized, Dr. Morford ordered an x-ray of his cervical spine, which revealed a fracture of the second cervical vertebra. Stickney subsequently developed a number of complications, necessitating a prolonged hospital stay.

Stickney filed this lawsuit on September 26, 1985, seeking damages for injuries and other losses sustained because of the alleged malpractice of Wesley and Dr. Morford. After a lengthy trial, the jury returned a verdict finding none of the parties to be at fault.

At the trial, collateral source benefits evidence was admitted pursuant to K.S.A. 1987 Supp. 60-3403 (subsequently held un-

constitutional in *Farley v. Engelken*, 241 Kan. 663, 740 P.2d 1058 [1987], and since repealed). The Court of Appeals reversed the judgment in this case in reliance upon *Farley* and our recent decision in *Harrier v. Gendel*, 242 Kan. 798, 751 P.2d 1038 (1988). Additional facts will be set forth as they become relevant to the various issues on appeal.

The first issue is whether the trial court erred in ruling that, if plaintiff introduced Dr. Charles Girod's deposition into evidence, the defendants would be permitted to admit certain evidence for impeachment purposes. In the pretrial conference order filed January 27, 1987, Charles Girod, M.D., deceased, was identified by the plaintiff as a witness by deposition. Dr. Girod had been deposed during discovery proceedings by attorneys for the defendants. Dr. Girod died after the deposition was taken but before trial. Defendant Wesley had filed a motion in limine to prohibit introduction of Dr. Girod's deposition, arguing that the deposition allowed inadequate opportunity for cross-examination of Dr. Girod as plaintiff's expert witness. The motion was denied.

On February 13, 1987, Wesley filed a motion seeking permission to introduce evidence that Dr. Girod's staff privileges at El Dorado Hospital had been terminated. Following a hearing on the motion, the court ordered production of the documents alleged to be pertinent to the matter and ordered that they be made available to all counsel. The judge specifically reserved until trial the issue of whether the documents or related testimony would be admissible. Although no record was made of the February 20 hearing on the motion, a journal entry reflecting the proceedings and the trial court's orders was filed February 27, 1987. The journal entry was approved by plaintiff's counsel.

On March 6, 1987, plaintiff filed a motion in limine, in part asking the court to prohibit defendants from presenting any evidence maligning the reputation of Dr. Girod. At trial, counsel for Wesley again requested that the court disallow Dr. Girod's discovery deposition. The trial court declined to reverse the earlier ruling allowing admission of the deposition. Wesley then renewed its motion to admit impeachment evidence. Specifically, Wesley sought to introduce evidence that Dr. Girod had falsified hospital records pertinent to a medical malpractice case in which he was involved while on the medical staff of El

Dorado Hospital and that following peer review proceedings his privileges at the hospital were terminated. Dr. Girod's deposition testimony had been to the contrary in that he asserted he had not been the subject of any disciplinary proceedings, had not been subjected to peer review proceedings by the hospital, had been cleared of everything, and had voluntarily resigned because of politics and disagreement with the hospital administrator. The trial court held that the defendants would be permitted to impeach Dr. Girod's deposition testimony. Plaintiff's counsel then moved for a mistrial, arguing that the court's ruling was unfair and a complete surprise. The court denied the motion. Plaintiff proceeded with the trial but elected not to introduce Dr. Girod's deposition.

The plaintiff argues that the trial court reversed its earlier ruling prohibiting defendants from introducing the impeachment evidence. He contends that the ruling was a complete surprise and was a gross abuse of discretion and that the hospital documents proposed by the defense for introduction were inadmissible hearsay evidence under K.S.A. 1987 Supp. 60-460. He also argues that the impeachment evidence would have been so highly prejudicial as to render Dr. Girod's deposition worthless. Plaintiff's arguments that he was surprised and that the court's ruling was a reversal of a prior ruling are totally without merit. In a journal entry filed over three months prior to trial, which was approved by plaintiff's counsel, the court stated: "The Court specifically reserves until the time of trial any and all rulings upon the admissibility into evidence of any of the above documents [the hospital records relating to Dr. Girod's hospital privileges] or testimony relating to said documents." Plaintiff's counsel should not have been surprised by the position asserted by Wesley or by the court's ruling on this matter.

On cross-examination of an expert witness, great latitude is necessarily indulged in order that the intelligence of the witness, his powers of discernment, and his capacity to form a correct judgment may be submitted to the jury so it may have an opportunity for determining the value of the testimony. *Bourgeois v. State Highway Commission*, 179 Kan. 30, 34, 292 P.2d 683 (1956). In *Bott v. Wendler*, 203 Kan. 212, 228, 453 P.2d 100 (1969), this court stated:

"The latitude permitted in the cross-examination of an expert witness is even

wider than in the case of an ordinary opinion witness. No rule can be laid down that would determine the extent and limitation of cross-examination allowable in every case. Generally speaking, the matter must rest in the sound discretion of the judge trying the case."

It is true that the evidence the defendants proposed to use to impeach Dr. Girod's testimony would have been extremely prejudicial and damaging. However, it is also clear that, if it had not been for the untimely death of Dr. Girod, the evidence could have been used in cross-examination of his live testimony. We think it was equally admissible when plaintiff desired to use the discovery deposition taken by defendants to his own advantage.

Plaintiff's brief on appeal, although not entirely clear, seems to assert that the impeaching documents would amount to inadmissible hearsay evidence pursuant to K.S.A. 1987 Supp. 60-460. The hearsay argument was not specifically raised before the trial court, but even if the issue is properly before this court, the documents would appear to be admissible as business records pursuant to the exception in K.S.A. 1987 Supp. 60-460(m). We find no abuse of discretion by the trial court on this issue.

The second issue is whether the trial court erred in permitting Jeanmarie Epperly to testify as an expert and to relate a personal experience as a victim of an automobile accident. Plaintiff also argues that the trial court should have permitted plaintiff's counsel to question Epperly concerning whether, in her experience, paralysis had ever resulted from movement of a patient's head.

Jeanmarie Epperly was called by the plaintiff as an adverse witness. On direct examination, plaintiff's counsel asked Epperly about her scholastic training and brought out that she was not a registered nurse. On cross-examination, counsel for Wesley presented evidence as to her educational and employment history. There is no support in the record for plaintiff's contention that Epperly testified as an expert witness for the defendants. All of her testimony was directed to her observations and treatment of the plaintiff and to one personal instance when she had been involved in an auto accident. She was allowed to testify that in her own case she had been transported to the hospital on a spine board with her neck in restraints and was not given a cervical spine x-ray after her arrival. One of plaintiff's theories was that a cervical spine x-ray should have been performed immediately, since he was transported to Wesley on a spine board, immobi-

lized by a cervical collar and foam wedges. We find no abuse of discretion in the allowance of the testimony, which had some relevance to one of the claims asserted by the plaintiff.

On redirect examination, plaintiff's counsel asked Epperly the following question: "Have you ever had an occasion where a patient in the Emergency Room at Wesley, whose head had been permitted to be moved and as a result of that movement the patient was paralyzed?" Counsel for Wesley immediately objected, arguing the question was too vague and general. The court sustained the objection.

Generally, the relevance of testimony elicited by a party from any witness, and the scope of both direct and cross-examination of a witness, is subject to reasonable control by the trial court. Exercise of reasonable control will not constitute reversible error absent a showing of abuse of discretion resulting in prejudice. *Manley v. Rings*, 222 Kan. 258, 261, 564 P.2d 482 (1977).

Plaintiff did not allege that he suffered paralysis following his treatment in the Wesley emergency room. The question posed to Epperly was irrelevant to this case. Whether or not head movement had ever caused a patient paralysis in Epperly's experience at Wesley had no bearing on any material issue in this case. No error or abuse of discretion has been shown.

The next issue involves the admission of collateral source benefits evidence pursuant to K.S.A. 1987 Supp. 60-3403. At trial, evidence was admitted indicating that plaintiff had Teamster's Union insurance and that nearly all his medical expenses had been reimbursed.

Subsequent to the trial of this case a majority of this court held K.S.A. 1987 Supp. 60-3403 unconstitutional in *Farley v. Engelken*, 241 Kan 663, 740 P.2d 1058 (1987). In *Harrier v. Gendel*, 242 Kan. 798, 751 P.2d 1038 (1988), the jury in a medical malpractice action found the defendant doctor had not been negligent in any degree, the same as in the present case. In *Harrier* the defendant doctor argued that the evidence of collateral source benefits related solely to the issue of damages and that the erroneous introduction of the evidence was harmless, since the jury returned a verdict of no negligence on the doctor's part. The plaintiff argued that the introduction of the collateral source benefits evidence was prejudicial, since it might have improperly influenced the jury on the issues of liability and negligence. This court stated:

"It is impossible to say that the jury's verdict was free from the prejudicial impact of the collateral source benefit evidence. To allow the introduction of evidence that the plaintiff received collateral source benefits is inherently prejudicial and requires reversal." 242 Kan. at 802.

Justice Lockett, in a well-reasoned short dissent stated:

"I agree with the majority's statement that evidence that a party received collateral source benefits is not admissible in a trial. *Farley v. Engelken*, 241 Kan. 663, 740 P.2d 1058 (1987). Under the instructions, however, the jury was not required to determine the collateral source issue. First, the jury was instructed to determine whether the defendant, Dr. Gendel, was negligent in his treatment of the plaintiff. If the jury found that the defendant was negligent, only then could it consider the fact that the plaintiff received collateral benefits while determining the compensation due the plaintiff.

"The burden is upon the plaintiff to show that jurors disregarded their oath, not as a matter of speculation, but as a demonstrable reality. There must be more than speculation that it was reasonably certain defendant did not receive a fair trial. *State v. Ruebke*, 240 Kan. 493, 498-99, 731 P.2d 842 (1987). Where a party claims error in the admission of certain evidence, there is no presumption of prejudice from the introduction of evidence alone; in addition, the party claiming error must also prove that the error prejudiced the party. *Walters v. Hitchcock*, 237 Kan. 31, 35, 697 P.2d 847 (1985).

"Unlike the majority, I cannot find that as a matter of law the improper introduction of evidence of collateral source benefits into the trial was so inherently prejudicial that it caused the jurors to disregard their oath and the judge's instructions and to decide the case on an improper ground. It is true the plaintiff did not receive a perfect trial, but he did receive a fair trial. I would affirm the judgment." 242 Kan. at 802.

In view of our holding in *Harrier*, the Court of Appeals reversed the present case and ordered the case remanded for a new trial. Our holding in *Harrier* that the admission of collateral source benefits evidence was "inherently prejudicial and requires reversal" was controlling at the time of the Court of Appeals' opinion in this case.

However, in the very recent case of *Wisker v. Hart*, 244 Kan. 36, Syl. ¶ 4, 766 P.2d 168 (1988), we overruled *Harrier* and held:

"The erroneous admission of collateral source evidence pursuant to K.S.A. 1987 Supp. 60-3403 (held unconstitutional in *Farley v. Engelken*, 241 Kan. 663, 740 P.2d 1058 [1987], and since repealed) is held to be harmless error where the jury found the plaintiff's decedent to be 60 percent at fault and, accordingly, did not determine damages. Our holding in *Harrier v. Gendel*, 242 Kan. 798, 751 P.2d 1038 (1988), to the contrary is overruled."

*Wisker* controls this issue now before the court and requires that

we reverse the Court of Appeals' opinion herein. In view of the very recent opinion in *Wisker*, we see no need to dwell upon this issue further.

The fourth issue is whether the trial court committed reversible error in refusing to permit plaintiff's counsel to cross-examine Dr. Greg Snyder regarding Snyder's alleged claim against Wesley in a prior malpractice action. Plaintiff alleges that this line of questioning was designed to challenge Dr. Snyder's credibility.

Dr. Snyder, a neurosurgeon, was called as an expert witness on behalf of Dr. Morford. Dr. Snyder had examined and treated Stickney soon after his arrival at Wesley. He testified that in his opinion Stickney's spinal cord injury occurred during the auto accident. He also testified that in his opinion nothing done in the emergency room in any way caused or contributed to Stickney's prolonged hospital stay.

On cross-examination, plaintiff's counsel inquired about a previous malpractice action naming Dr. Snyder, Wesley, and others as defendants. The witness was asked whether he had claimed in that suit that the plaintiff's injuries were caused by Wesley and the defendant radiologists. He responded, "I didn't make any claim that was true." The court sustained the objection by Wesley's counsel on the ground that the question was immaterial. Out of the hearing of the jury, plaintiff's counsel proffered that in the prior lawsuit Dr. Snyder was found not at fault and 100 percent of the fault was attributed to Wesley and the other defendants. Under the doctrine of comparative fault, certain pleadings filed on behalf of Dr. Snyder had alleged that if there was any negligence it was that of Wesley and the other defendants and not Dr. Snyder. Counsel argued he was entitled to show that Dr. Snyder's statement that he had made no claim against Wesley was incorrect.

Although the witness had answered the question before the court had an opportunity to rule on the objection, the ruling sustaining the objection was correct. When read in the context of a cold record the answer, at best, is ambiguous. In any event, the entire line of questioning which related to an unconnected case was not material or relevant to the issues in this case. Extrinsic evidence of a prior inconsistent statement may be admitted for impeachment purposes only if the subject matter of the incon-

sistency is material to the instant case. Lilly, An Introduction to the Law of Evidence § 84 (1978). In this case, the plaintiff sought to impeach the witness using extrinsic evidence dealing with a collateral matter—the negligence of Wesley in an unrelated lawsuit. The evidence was therefore properly excluded by the trial court. See *State v. Carter*, 148 Kan. 472, 473, 83 P.2d 689 (1938); *State v. Ray*, 54 Kan. 160, 161, 37 Pac. 996 (1894). In *State v. Alexander*, 89 Kan. 422, Syl. ¶ 3, 131 Pac. 139 (1913), this court held: "Evidence should not be admitted to contradict a statement of a witness elicited upon cross-examination upon a purely collateral matter which does not tend to prove or disprove an issue in the case, the contradictory evidence being offered by the party eliciting the statement."

The scope and extent of cross-examination for impeachment purposes rests largely in the trial court's discretion. *State v. Nixon*, 223 Kan. 788, 794, 576 P.2d 691 (1978); *State v. Nix*, 215 Kan. 880, 884, 529 P.2d 147 (1974). We find no abuse of discretion in the court's ruling.

Plaintiff also apparently complains that the trial court erred in sustaining objections to other questions propounded to Dr. Snyder on cross-examination. This line of questioning pertained to whether a cervical spine x-ray should have been taken prior to the time Stickney was permitted to sit up without wearing a cervical collar, and whether a cervical spine x-ray was indeed taken prior to that incident. Since plaintiff has not specifically briefed his arguments pertaining to this issue, it is waived or abandoned. *Feldt v. Union Ins. Co.*, 240 Kan. 108, 112, 726 P.2d 1341 (1986); *Steele v. Harrison*, 220 Kan. 422, 429, 552 P.2d 957 (1976).

The fifth issue is whether the trial court erroneously denied plaintiff his right to cross-examine Dr. Philip Mills by sustaining various objections lodged by the defendants.

Dr. Mills testified for defendant Wesley. He is a physician whose specialty is physical medicine and rehabilitation. He was initially consulted in the Stickney case on December 9, 1983, and was responsible for directing Stickney's rehabilitation therapy from that date until after his discharge from the hospital.

The record does not support plaintiff's argument that he was denied his right to cross-examine Dr. Mills. Although the court did sustain several objections to particular questions raised on

cross-examination, none of the rulings constitute reversible error. The scope of cross-examination lies within the sound discretion of the trial court. *Kearney v. Kansas Public Service Co.*, 233 Kan. 492, 501, 665 P.2d 757 (1983). The evidence plaintiff sought to elicit concerned events which took place when Stickney was first brought to the emergency room. The questions not only exceeded the scope of direct examination, but Dr. Mills repeatedly testified he had no knowledge or expertise regarding emergency room procedures. No abuse of discretion has been shown.

The last issue is whether the jury's verdict must be set aside and a new trial granted because the jury was permitted to read and examine certain depositions that were not admitted in evidence. This issue was never raised before the trial court and is not properly before this court for review. *Kansas Dept. of Revenue v. Coca Cola Co.*, 240 Kan. 548, 552, 731 P.2d 273 (1987). In addition, the record is not sufficient to afford meaningful review.

The decision of the Court of Appeals is reversed, and the judgment of the trial court is affirmed.

Six, J., not participating.

Allegrucci, J., concurring in part and dissenting in part:

I concur with the majority in all but section (4) of the syllabus and the corresponding portion of the opinion. This court's decision in *Harrier v. Gendel*, 242 Kan. 798, 751 P.2d 1038 (1988), was correct and I would reverse and remand the case for a new trial.