No. 61,326

CLIFFORD F. DAVIS AND IVA L. DAVIS, *Appellants*, v. CITY OF LEAV-
ENWORTH, KANSAS, and GREENAMYRE RENTALS, INC., *Appellees.*
(759 P.2d 113)

*Opinion filed
July 8, 1988.*

*Rod L. Richardson,* of Wallace, Saunders, Austin, Brown and Enochs, Char-
tered, of Overland Park, argued the cause, and *Daniel B. Dorsch,* of the same
firm, was with him on the briefs for appellant.

*Robert D. Beall,* of Davis, Beall, McQuire & Thompson Chartered, of Leav-
enworth, argued the cause and was on the brief for appellee City of Leavenworth.

*Neil R. Shortlidge,* of Freilich, Leitner, Carlisle & Shortlidge, of Overland
Park, argued the cause, and *Terri A. Muren,* of Kansas City, Missouri, was with
him on the brief for appellee Greenamyre Rentals, Inc.

The opinion of the court was delivered by

MILLER, J.: This is an appeal by the plaintiffs, Clifford F. Davis
and Iva L. Davis, from the involuntary dismissal of this action by
the Leavenworth District Court. Defendants are Greenamyre
Rentals, Inc., the owners of the property rezoned, and the City of
Leavenworth.

The facts are not disputed. Greenamyre Rentals, Inc., filed an
application for approval of a planned unit development (PUD)
and for rezoning with the City of Leavenworth pursuant to K.S.A.
12-729. Plaintiffs are the owners of property which lies within
200 feet of the Greenamyre tract. On September 9, 1986, the City
of Leavenworth approved Greenamyre's request for rezoning
along with the preliminary plans submitted with the application.

The City's approval was formalized on the same date by the adoption of Leavenworth City Ordinance No. 6482, which re-zoned the Greenamyre tract from single family residential to planned unit development.

Several months later, an application for final approval of the planned unit development was submitted by Greenamyre, and approval was granted by the City on January 13, 1987. The rezoning ordinance adopted September 9, 1986, was first pub-lished on January 16, 1987. Within 30 days, and on February 12, 1987, plaintiffs filed their petition for review of the rezoning decision of the City of Leavenworth.

The trial court's memorandum and order finding that the court lacked subject matter jurisdiction because plaintiffs' action was not filed "within 30 days after the making of a decision" on the zoning ordinance, and ordering the action dismissed, was filed July 24, 1987, and copies were mailed to counsel. On August 20, 1987, the trial court filed a judgment form. On August 27, 1987, notice of appeal was filed by the plaintiffs. Appeal was taken to the Court of Appeals, and the case was later transferred to this court pursuant to K.S.A. 20-3018.

Defendants moved to dismiss the action in the Court of Ap-peals. They challenged the jurisdiction of the appellate court, contending that the notice of appeal was not timely filed. They claimed that the time for appeal commenced to run on July 24, 1987, when the trial judge's memorandum and order was filed. The Court of Appeals examined the facts carefully, and in a lengthy memorandum denied defendants' motion for involun-tary dismissal. The Court of Appeals found that the appeal was timely filed, and we agree. K.S.A. 60-258 provides in applicable part that:

"No judgment shall be effective unless and until a journal entry or judgment form is signed by the trial judge and filed with the clerk of the court."

The memorandum and order prepared, signed, and filed by the trial court did not direct counsel to prepare a journal entry, nor did it recite that it would serve as a journal entry. Later, the trial court prepared and filed a judgment form in compliance with K.S.A. 60-258. The judgment form directed the entry of judgment in accordance with the trial court's memorandum and order and also assessed the cost of the proceeding against the plaintiffs. We conclude the judgment became effective upon the filing of the judgment form. Plaintiffs' notice of appeal was timely filed.

A review of the statutes involved is necessary to an understanding of the factual background. We will discuss them in numerical order, and quote such portions of the statutes, or the substance thereof, as applicable.

Article 7, chapter 12 of the Kansas Statutes Annotated contains the general provisions for planning and zoning in cities. K.S.A. 12-707 authorizes zoning by cities. The statute reads:

"The governing body of any city is hereby authorized *by ordinance* to divide such city into zones or districts, and regulate and restrict the location and use of buildings and the uses of the land within each district or zone." (Emphasis added.)

K.S.A. 12-708 provides for the development of zoning plans by the planning commission, the giving of notice of public hearings by the commission, the recommendation of a proposed zoning ordinance to the city, and the city's adoption thereof by ordinance. It also sets forth the procedure by which changes in zoning may be effected or property may be rezoned. A property owner may petition for a change. Notice of hearing must be published in the official city newspaper, notice by mail must be given to certain nearby landowners, the commission must hold a public hearing and make recommendations to the governing body of the city, and the change is effected by city ordinance.

K.S.A. 12-712 is the zoning appeals statute. It reads:

"Any ordinance or regulation or amendment thereto provided for or authorized by this act shall be reasonable, and any taxpayer or any other person having an interest in property affected, may have the reasonableness of any ordinance, regulation or amendment thereto determined by bringing an action against the governing body of the city within thirty days after the making of a decision on a zoning ordinance or regulation, or amendment thereto, by such governing body. Such action shall be brought in the district court of the county in which such city is situated."

K.S.A. 12-725 through -733 authorize both cities and counties to zone certain described areas for "planned unit development." K.S.A. 12-726(e) defines planned unit development as follows:

" 'Planned unit development' is an area of land controlled by a landowner to be developed as a single entity for a number of dwelling units, office uses, commercial uses, or any combination thereof, if any, the plan for which does not correspond in lot size, bulk or type of dwelling or commercial or industrial use, density, lot coverage and required open space, to the regulations established in any one or more of the districts created from time to time under the provisions of municipal zoning regulations adopted pursuant to the provisions of article 7 of

chapter 12 and article 29 of chapter 19 of the Kansas Statutes Annotated and amendments thereto."

K.S.A. 12-728 is a lengthy statement of the standards and conditions for all planned unit developments.

K.S.A. 12-729 reads in part as follows:

"An application for approval of a planned unit development shall constitute the filing of an application for the establishment of a planned unit development district by the landowner in the same manner prescribed for amending the zoning ordinance in K.S.A. 12-708, 19-2919 and 19-2927 *et seq.* The same requirements for notice and advertisement of public hearings shall be required as conventional zoning. Similarly, the same procedures as required for the adoption of an original zoning ordinance or the amendment thereto shall be followed by the planning commission and the governing body in the establishment of the planned unit development. Protests to the establishment of such a planned unit development zoning district shall be the same as provided for conventional zoning. Before any zoning, occupancy or building permit shall be issued or before any development of land shall take place, the landowner shall:

"(a) Submit a preliminary development plan for the planned unit development, including all of the area to comprise such planned unit development. . . .

"(b) After approval of a preliminary development plan by the approving authority, the landowner shall file with the register of deeds a statement that such a plan has been filed with the approving authority and has been approved and that such planned unit development is applicable to certain specified legally-described land . . . .

"(c) Submit an application for final approval. This may be for all of the land included within a plan, or to the extent set forth in tentative approval for a section thereof. The application shall include such drawings, specifications, covenants, easements, conditions and form of performance bond as set forth in the approval of the preliminary development plan and in accordance with conditions established in the zoning regulations for planned unit developments.

"A plan submitted for final approval shall be deemed to be in substantial compliance with the plan previously given tentative approval provided any modification by the landowner of the plan as tentatively approved does not:

"(1) Vary the proposed gross residential density or intensity of use by more than five percent (5%) or involve a reduction in the area set aside for common open space, nor the substantial relocation of such area, nor

"(2) increase by more than ten percent (10%) the floor area proposed for nonresidential use, nor

"(3) increase by more than five percent (5%) the total ground area covered by buildings nor involve a substantial change in the height of buildings.  ·

"A public hearing need not be held to consider modifications on location and design of streets or facilities for water or disposal storm water or sanitary sewers or other public facilities required as a tentative condition of approval of a preliminary development plan. The burden shall, nevertheless, be upon the landowner to show the approving authority good cause for any variation between the plan as tentatively approved and the plan as submitted for final approval. In the event a public hearing is not required for final approval and the application

for final approval has been filed, together with all drawings, specifications and other documents in support thereof, the approving authority shall within forty-five (45) days of such filing grant such plan final approval: *Provided, however,* That in the event the plan as submitted contains variations from the plan given tentative approval but remains in substantial compliance with the plan as submitted for tentative approval, the approving authority may, after meeting with the landowner, refuse to grant final approval and shall within forty-five (45) days from the filing of the application for final approval so advise the landowner in writing of said refusal, setting forth in said notice the reasons why one or more [of] said variations are not in the public interest. The landowner may either treat the refusal as a denial of final approval and resubmit said final plan in accordance with the request of the approving authority, or he or she may notify the approving authority within forty-five (45) days of notice of the date of refusal, his or her notice to appeal the decision of the approving authority. In the event such an appeal is filed, the approving authority shall schedule a public hearing, giving such notice as is required for preliminary approval. After a public hearing by the approving authority and in the event the landowner is not in agreement with the decision of the approving authority, the landowner may request within thirty (30) days that the application for final plan approval be submitted to the governing body for final decision. Any reason for disapproval of the final development plan by either the approving authority or the governing body shall be set forth in full. A plan or any part thereof which has been given final approval by the approving authority, or upon appeal to the governing body, shall be so certified by the secretary of the approving authority, and shall be filed of record with the register of deeds immediately following the satisfying of all conditions precedent and conditioned upon such approval. In the event that a plan or section thereof is given final approval and thereafter the landowner shall abandon said plan or the section thereof finally approved and shall so notify the municipality in writing, or in the event the landowner shall fail to commence the planned unit development within eighteen (18) months after final approval has been granted, then in that event such final approval shall terminate and shall be deemed null and void unless such time period is extended by the approving authority upon written application by· the landowner."

### K.S.A. 12-730 provides for public hearings. It reads:

"Before the approving agency shall approve a preliminary development plan, they shall hold a public hearing giving the same notice as is required for an amendment to the zoning ordinance map. A public hearing on the application for final approval of the plan or part thereof shall not be required provided the plan or part thereof submitted for final approval is in substantial compliance with the plan theretofore given tentative approval."

Article 30 of chapter 12 includes general provisions relating to the adoption of city ordinances.

### K.S.A. 12-3007 requires the publication of ordinances, and fixes the effective date. It reads:

"The city clerk shall cause all ordinances, except appropriation ordinances, *as soon as practicable after they have been passed and signed,* . . . to be pub-

lished once in the official city newspaper, unless a statute requires more publications. Ordinances shall take effect the day of publication unless a different and later day is stated in the ordinance or otherwise specified by statute: *Provided,* That appropriation ordinances shall take effect upon passage. The publisher shall print in a line preceding the number of the ordinance a statement in parentheses as follows: (Published _____, 19___), giving the month, day and year. The manner of publication and effective date of codifications shall be as hereinafter provided." (Emphasis added.)

K.S.A. 12-3008 requires the city clerk to keep an "ordinance book" in which shall be entered a copy of every ordinance *immediately after its publication,* or, in the case of appropriation ordinances, immediately after passage. The clerk is required to append a certificate, certifying the name of the newspaper and the date of publication of each ordinance.

K.S.A. 1987 Supp. 60-2101(d) provides for appeals from the judgment or final order made by a political or taxing subdivision. It reads:

"A judgment rendered or final order made by a political or taxing subdivision, or any agency thereof, exercising judicial or quasi-judicial functions may be reversed, vacated or modified by the district court on appeal. *If no other means for perfecting such appeal is provided by law,* it shall be sufficient for an aggrieved party to file a notice that such party is appealing from such judgment or order with such subdivision or agency within 30 days of its entry, and then causing true copies of all pertinent proceedings before such subdivision or agency to be prepared and filed with the clerk of the district court in the county in which such judgment or order was entered. The clerk shall thereupon docket the same as an action in the district court . . . ." (Emphasis added.)

The first issue is whether K.S.A. 12-712 or K.S.A. 1987 Supp. 60-2101(d) is the proper statute under which the plaintiff landowners could appeal in this action. Counsel contends that our prior case law is conflicting. *Sabatini v. Jayhawk Construction Co.,* 214 Kan. 408, 520 P.2d 1230 (1974), arose from an annexation proceeding. Plaintiff brought the action to enjoin the city from approving the plat and annexing a subdivision containing 22 acres. The ordinance challenged in that case was enacted pursuant to K.S.A. 1973 Supp. 12-520(g). Appellants contended that they had a right to test the reasonableness of the platting and annexation under the authority granted in K.S.A. 12-712. We noted that section 712 was originally enacted as a part of chapter 100 of the laws of 1921, relating to zoning. Appellants attempted to tie the remedy provided in section 712 to K.S.A. 1973 Supp. 12-705, -705a, -705b, and -705c, all of which relate to the platting

and the subdividing of land. We held that the "act" referred to in K.S.A. 12-712 is restricted to the act of which 12-712 was originally a part, chapter 100 of the laws of 1921 relating to zoning, and does not refer to chapter 99 of the laws of 1921, which are the platting and subdividing statutes. In short, the controversy in *Sabatini* was not over zoning, but over platting and annexation, and we held that K.S.A. 12-712 did not provide an appropriate vehicle for appeal for platting and annexation matters. Although we said that the "act" referred to in section 712 is restricted to chapter 100 of the laws of 1921 relating to zoning, the essence of our holding was that section 712 provides for appeals in zoning matters only, not for appeals from other city action.

In the more recent case of *Sprint Print, Inc. v. City of Overland Park*, 238 Kan. 230, 708 P.2d 210 (1985), we held that the purpose of K.S.A. 12-712 is to insure the availability of appellate review for all city zoning actions, including the denial by a city under its zoning ordinance of a special use permit. We said: "[I]t is obvious judicial review for reasonableness pursuant to K.S.A. 12-712 should be available for *all* zoning actions taken by a city, including special use permits." 238 Kan. at 233. Special use permits were not within the 1921 zoning act.

In the present case, the action requested by the developer was the rezoning of a tract of land to permit a planned unit development. The action is governed by K.S.A. 12-725 *et seq.* Those statutes were enacted in 1969, and are separate from and supplemental to the conventional zoning statutes. It is said that PUDs "merge such diverse land uses as housing, recreation, and commercial units in one self-contained development. PUDs are zoned under special cluster zoning requirements that compute roads and park areas as a percentage of the square feet of land required for homes or living units." Galaty, Allaway, & Kyle, Modern Real Estate Practice, p. 37-38 (9th ed. 1982). "Planned Unit Development (PUD) is a zoning technique which allows more flexibility than conventional zoning to permit clustering of residential uses and, in some instances, compatible commercial and industrial uses. The limitations of lot by lot development are avoided by focusing on density requirements and mixtures of uses." Rhyne, The Law of Local Government Operations § 26.39, p. 780 (1980). Those descriptions of a PUD parallel the definition set forth in 12-726(e). Here, the City ordinances pro-

vided for PUD zoning. The City approved the application and the preliminary plan filed by Greenamyre, and formally rezoned the tract by adopting an ordinance. This was a zoning action. Accordingly, K.S.A. 12-712 provided the appropriate vehicle under which to challenge the reasonableness of the City's action.

The action being proper under K.S.A. 12-712, the question then arises: When does the 30-day period for an appeal commence? The City's action in approving the preliminary plans and in rezoning the property was taken by the enactment of a city ordinance. K.S.A. 12-712 requires that action be commenced "within thirty days after the making of a decision on a zoning ordinance or . . . amendment." The City argues that the time commenced to run when the City governing body passed and enacted the ordinance, September 9, 1986. Changes in zoning are required to be by ordinance. K.S.A. 12-708. The simple approval of the preliminary plan, without more, had no effect on adjoining landowners; the act which affects others is the rezoning of the property. That was accomplished by ordinance.

The ordinance here at issue, however, was not effective on September 9, 1986. Instead, it was effective upon publication—January 16, 1987. The city ordinance was not published for over four months, despite the requirement of K.S.A. 12-3007 that ordinances be published "as soon as practicable after they have been passed and signed." "Practicable" was defined in *Beck v. Shawnee County*, 105 Kan. 325, 335, 182 Pac. 397 (1919), as meaning "capable of being . . . done or accomplished." Webster's Third New International Dictionary 1780 (1964) defines "practicable" as meaning "capable of being put into practice, done or accomplished." Publication could and should have been accomplished immediately after September 9, 1986, when the ordinance was passed. The decision by the City could only be made by ordinance. The ordinance was passed but not published. The decision was thus in limbo, suspended in midair.

Until the ordinance was published, there was no City action, no decision from which to appeal. K.S.A. 12-3007 specifically provides that "[o]rdinances shall take effect the day of publication." There was no decision to rezone the property until the ordinance was enacted by the City, signed, and published. The 30-day period commenced on January 16, 1987, when the ordinance was published. This suit to challenge the reasonableness

of the rezoning ordinance, commenced on February 12, 1987, was timely filed.

The judgment is reversed, and the case is remanded to the district court of Leavenworth County for further proceedings.