No. 63,277 ■

CLIFFORD F. DAVIS and IVA L. DAVIS, *Appellees,* v. CITY OF
LEAVENWORTH, KANSAS, *Appellant,* and GREENAMYRE RENTALS,
INC., *Defendant.*

(802 P.2d 494)

Opinion filed December 7, 1990.

*Robert D. Beall*, of Davis, Beall, McGuire & Thompson, Chartered, of Leavenworth, argued the cause, and was on the briefs for appellant.

*Rod L. Richardson*, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

SIX, J.: This is a specific tract rezoning action initiated under K.S.A. 12-712. The two issues are whether: (1) the record is adequate to permit a determination of reasonableness; and (2) if the record is adequate for such a determination, whether the defendant acted reasonably in approving the zoning ordinance. The defendant City of Leavenworth (the City) appeals the trial court's granting summary judgment to plaintiffs, Clifford F. Davis and Iva L. Davis, the landowners objecting to the rezoning. Greenamyre Rentals, Inc., a defendant below, did not join in the City's appeal.

The trial court found the City's zoning decision to be unreasonable because the record was inadequate to make a reasonableness determination.

In an unpublished opinion filed March 9, 1990, the Court of Appeals reversed the summary judgment ruling and remanded to the trial court for its remand to the City. The City was to make findings and conclusions upon which to base a possible judicial determination of reasonableness if the City chose to rely upon the ordinance as valid. We granted the Davises' petition for review.

We find that: (1) the record contains sufficient evidence to determine whether the City acted reasonably; and (2) the City did act reasonably. We enter summary judgment for the City. The rezoning ordinance is valid.

### Facts

Greenamyre Rentals, Inc., (Greenamyre) filed a petition in March of 1986 to rezone a 4.88 acre tract of land it owned from R1-9 single-family residential to a planned unit development (PUD). The PUD would permit retirement townhomes. The first staff report to the Leavenworth City Planning Commission (Planning Commission) recommended that the petition be denied. The Planning Commission's first consideration of Greenamyre's petition for rezoning was in April 1986. The matter was tabled without discussion. The Planning Commission, a month later, reconvened the public hearing on Greenamyre's rezoning request. Greenamyre's representative, David Greenamyre, spoke on behalf of the development. His proposed plan consisted of a 32-unit townhouse complex with 4 single family housing units to buffer the existing residences. A staff alternative of 22 townhouses and 4 single family housing units was presented. Single family homeowners residing near the Greenamyre tract spoke in opposition to the PUD. Their opposition was based on traffic congestion and reduced property values. The Planning Commission asked Greenamyre to consider extending open space buffers and reducing the number of townhomes.

A later Planning Commission staff report stated that the PUD may have a negative impact on the surrounding properties. The report cited a 41% increase in traffic and a 100% increase in density over the existing single family zoning. The report analyzed an alternative plan with 16 townhouses and 6 single family homes as buffers. The alternative plan would increase density only 40%

while creating only a 4% increase in traffic. The staff report made no recommendations.

The Planning Commission met again in June 1986. Greenamyre reduced the proposal to 24 townhouses and 4 single family houses. Surrounding property owners spoke in opposition to the project. The Planning Commission voted 5 to 5 on the motion to approve the PUD rezoning proposal and forwarded the plan to the City without a recommendation.

Notice of the June 1986 planning commission meeting was improper, so the request for rezoning was heard again by the Planning Commission in July 1986. Surrounding property owners repeated their opposition, citing traffic and the single family nature of the area. Greenamyre stated that the PUD would not have an impact on the area any more than the single family houses which could be built on the tract with the current zoning. Several retired persons testified in favor of the PUD, citing the need for retirement housing. With one member absent, the Planning Commission voted 5 to 4 to recommend approval of the petition.

The City considered the Planning Commission's recommendation to rezone Greenamyre's tract in August 1986. David Greenamyre explained the proposed PUD. The proposed plan consisted of 28 townhouses and a buffer of 4 single family houses. The proposed townhouses were one- and two-bedroom units with attached garages subject to three restrictions: (1) Residents must be at least 55 years of age, (2) each unit cannot permanently house more than two tenants, and (3) the townhouses cannot permanently house children of tenants. Three persons spoke in favor of the PUD, stating that the City needed retirement housing.

Many surrounding landowners spoke against the proposed PUD. They stated general concerns centering on increased traffic, nonconformity with the present community, reduced property values, and incompatibility.

After considerable discussion, the City made two findings: (1) The PUD is not in conflict with the existing comprehensive plan (a vote of 4 to 1), and (2) the PUD will not have a substantially adverse effect on the neighborhood (a vote of 3 to 2). The City then voted 4 to 1 to accept the Planning Commission's recom-

mendation to approve the preliminary development plan subject to final approval of architecture and density.

In September 1986, the City again considered Greenamyre's application to rezone. The minutes of the meeting reflect that the developer addressed the governing body regarding issues raised at the previous August meeting. David Greenamyre presented final architectural and density plans. The staff provided Greenamyre with a printed list of ten considerations that the City needed to address. The list was labeled "Statutory Consideration Regarding Rezoning." The ten listed questions were followed by the statement: "All ten items must be taken into consideration but any single item, if considered important enough, can be used as the reason for allowing or denying development."

The ten listed considerations were:

"1. What is the character of the surrounding land?
"2. What is the zoning of the surrounding land?
"3. Is this property suitable for the requested change?
"4. Will the change cause a detrimental effect to surrounding uses?
"5. How long has the land been vacant as zoned? "6. Will there be any gain to the public health or safety as a result of this project?
"7. Will the project destroy surrounding property value?
"8. Does the project conform to the comprehensive plan?
"9. Are there other pertinent factors unique to this situation?
"10. What is the staff recommendation regarding the proposed change?"

The ten-item list was apparently available to the Planning and City Commission members during consideration of Greenamyre's PUD application.

The City had adopted the *Golden v. City of Overland Park,* 224 Kan. 591, 598, 584 P.2d 130 (1978), factors in its zoning ordinance, § 21.802, *Conditions of Determination.* The ten-item list was an outline of § 21.802 of the zoning ordinance.

The ten items repeat the factors set out in *Golden,* 224 Kan. at 598, and add one additional items. ("Are there other pertinent factors unique to this situation?" No. 9 from the list.)

David Greenamyre addressed each of the ten listed considerations. His statements are summarized in the minutes of the September 9, 1986, meeting.

Several surrounding property owners again spoke in opposition. They expressed concern about the detrimental effect to the neighborhood, enforcement of regulations, increased traffic, setback

requirements, and architecture. The Mayor referred to the list of ten factors that the City had been given to consider. He took issue with Greenamyre's response to: factor (4), detrimental effect to surrounding uses; factor (5), length of time property vacant; factor (7), destruction of surrounding property values; factor (8), conforming to comprehensive plan; and factor (10), staff recommendations. The City approved the ordinance rezoning the property on a 4 to 1 vote subject to the final plan being presented to the City for approval before building permits would be issued.

The Planning Commission, in January 1987, voted to recommend final approval. On January 13, 1987, the City Commission gave final approval to the ordinance granting the rezoning. The ordinance was published on January 16, 1987.

The Davises are the owners of property within 200 feet of the Greenamyre tract. They filed suit pursuant to K.S.A. 12-712, challenging the reasonableness of the City's actions in granting the rezoning. The trial court dismissed the action, finding that the court lacked subject matter jurisdiction because the Davises failed to file their notice of appeal within 30 days of the City's September 1986 approval of the ordinance.

The Davises appealed. We reversed and remanded. See *Davis v. City of Leavenworth*, 243 Kan. 522, 759 P.2d 113 (1988) (*Davis I*). We determined that the ordinance became effective on the date of publication, January 16, 1987. The Davises had filed their notice of appeal within 30 days. 243 Kan. at 529-30.

On remand, the Davises' summary judgment motion was granted. The trial court found the record of the zoning decision was inadequate to make a reasonableness determination and, therefore, the City's rezoning decision was unreasonable. The ordinance was declared void.

After filing its notice of appeal, the City unsuccessfully moved the Court of Appeals to remand the case for reconsideration based on our recent opinion in *Landau v. City Council of Overland Park*, 244 Kan. 257, 767 P.2d 1290 (1989). *Landau* was filed on January 20, 1989, after the trial court's December 20, 1988, decision in the case at bar.

The Davises state in their brief that on remand after *Davis I*, the parties filed cross-motions for summary judgment. Our review of the record discloses only the Davis summary judgment motion.

However, we are assured by both parties that the entirety of the record was before the trial court and that the same full record is before this court.

The Davises inform us:

"[t]hat since the record on appeal to the trial court is the gravamen of this appeal, it should be pointed out that there is no dispute between the parties that the entirety of the record made by the Defendant, City, in connection with the zoning matter before it, was before the trial court for review."

The City assures us:

"This is not a situation where no record of the proceedings exists but, in fact, is a situation where a complete record exists including audio tapes of the proceedings before the Planning Commission as well as audio and video tapes of the proceedings before the governing body of the City."

## A Reasonableness Determination—
## Adequacy of The Record Below

The City contends that the factors which it considered in granting the PUD zoning ordinance is apparent in the minutes and transcripts of the City's meetings. We agree.

The trial court found the record of the zoning decision insufficient to make a reasonableness determination and as a result found the City's action unreasonable.

K.S.A. 12-712 provides in part:

"Any [zoning] ordinance . . . or amendment thereto . . . shall be reasonable, and any taxpayer or any other person having an interest in property affected, may have the reasonableness of any ordinance . . . or amendment thereto determined by bringing an action against the governing body of the city . . . after the making of a decision on a zoning ordinance . . . or amendment thereto, by such governing body."

The scope of review in zoning cases is governed by a series of concepts summarized in *Combined Investment Co. v. Board of Butler County Comm'rs*, 227 Kan. 17, 28, 605 P.2d 533 (1980):

"(1) The local zoning authority, and not the court, has the right to prescribe, change or refuse to change, zoning.
"(2) The district court's power is limited to determining
    (a) the lawfulness of the action taken, and
    (b) the reasonableness of such action.
"(3) There is a presumption that the zoning authority acted reasonably.
"(4) The landowner has the burden of proving unreasonableness by a preponderance of the evidence.

"(5) A court may not substitute its judgment for that of the administrative body, and should not declare the action unreasonable unless clearly compelled to do so by the evidence.

"(6) Action is unreasonable when it is so arbitrary that it can be said it was taken without regard to the benefit or harm involved to the community at large, including all interested parties, and was so wide of the mark that its unreasonableness lies outside the realm of fair debate.

"(7) Whether action is reasonable or not is a question of law, to be determined upon the basis of the facts which were presented to the zoning authority.

"(8) An appellate court must make the same review of the zoning authority's action as did the district court."

These *Combined Investment Co.* concepts serve as a backdrop against which the factors considered by the City in reaching its decision are to be viewed.

In *Golden,* we observed:

"A mere yes or no vote upon a motion to grant or deny leaves a reviewing court, be it trial or appellate, in a quandary as to why or on what basis the board took its action. A board, council or commission, in denying or granting a specific zoning change, should enter a written order, summarizing the evidence before it and stating the factors which it considered in arriving at its determination." 224 Kan. at 597.

Our observation continues to have merit. We commend it to any board, council, or commission denying or granting a specific zoning change.

*Golden* enumerated eight factors which a zoning body should consider:

(1) the character of the neighborhood;
(2) the zoning uses of nearby properties;
(3) the suitability of the property for the uses to which it is restricted;
(4) the extent to which the change will detrimentally affect nearby property;
(5) the length of time the property has been vacant as zoned;
(6) the gain to the public health, safety, and welfare by the possible diminution in value of the developer's property as compared to the hardship imposed on the individual landowners;
(7) the recommendations of a permanent or professional planning staff; and
(8) the conformance of the requested change to the city's master or comprehensive plan. 224 Kan. at 598.

These are suggested factors only. Other factors may be important in an individual case. 224 Kan. at 599.

The City codified the *Golden* factors. Section 21.802, *Conditions of Determination,* of the City's zoning ordinance provides:

"Whenever the Planning Commission or Governing Body takes action on an application for an amendment to a zoning ordinance pursuant to K.S.A. 12-708, and amendments thereto, and where such proposed amendment is not a general revision of existing ordinances and will affect specific property, the Planning Commission or Governing Body shall give consideration to the following factors:

"These factors considered in taking action on any proposed amendment shall be included in the minutes or otherwise be made part of the written record.

    A. The character of the neighborhood;

    B. The zoning and uses of properties nearby;

    C. The suitability of the subject property for the uses to which it has been restricted;

    D. The extent to which removal of the restrictions will detrimentally affect nearby property;

    E. The length of time the subject property has remained vacant as zoned;

    F. The relative gain to economic development, public health, safety and welfare by the reduction of the value of the landowner's property as compared to the hardship imposed by such reduction upon the individual landowner;

    G. The recommendations of permanent or professional staff;

    H. The conformance of the requested change to the adopted or recognized Comprehensive Plan being utilized by the City. Other factors relevant to a particular proposed amendment may be considered."

The trial court found that the City failed to follow the requirements of its zoning ordinance § 21.802, which prevented the court from reviewing the reasonableness of the City's action.

The *Golden* factors were included in the City's minutes and made a part of the written record by virtue of David Greenamyre's statements. In the transcript of the September 9, 1986, meeting, David Greenamyre states: "I will try to fit my closing remarks around the questions that the Staff said that the Commission needs to consider in a rezoning like this." He then addressed each of the *Golden* factors. A summary of Greenamyre's comments was placed in the minutes of the September 9 meeting. A discussion of Greenamyre's presentation took place during that meeting with both the public and the commissioners participating. At the end of the discussion, the City took its second vote on the rezoning ordinance, which was to approve the PUD. The City gave consideration to each of the factors as mandated by the ordinance, even though brought up by the developer. The evidence considered was made a part of the written record.

Further evidence exists in the record to support a finding of sufficiency. At the August 12, 1986, City Commission meeting, in which the first vote was taken, the City made specific findings that (1) the PUD was not in conflict with the City's comprehensive plan and (2) there would be no substantially adverse effect on the neighborhood. (*Golden* factors 8 and 4, City zoning ordinance § 21.802 factors H and D.) These two *Golden* factor findings obviously formed, in part, a basis for the City's decision to grant the rezoning request.

In that same meeting, the City also addressed the need for this type of development, the current zoning classification, the density of the development, and the traffic needs and problems.

Throughout the meetings of the Planning Commission and the City, many residents in the area of the proposed PUD spoke against the project because of the perceived negative impact it might have on property values. This evidence addresses the factors set forth in the City's zoning ordinance § 21.802. The City, by including such information in the meeting transcripts, complied with the mandate of zoning ordinance § 21.802.

The trial court stated that, since the City did not specifically adopt Greenamyre's comments as its own, the decision to approve the PUD could have been made on other grounds. Although this is a true statement, zoning ordinance § 21.802 only requires that the City consider the factors and that the factors be included in the minutes or otherwise made a part of the written record. The ordinance also allows consideration of other relevant factors. It does not require that the basis for the City's decision be specifically enumerated or specifically based upon the eight *Golden* factors.

A reading of both *Golden* and *Landau* indicates that the *Golden* factors were meant to aid both cities and courts in addressing zoning decisions and are not to be rigidly applied as the only basis for zoning determinations. In *Landau*, we specifically stated that a City's actions are not per se unreasonable solely because the factors are not enumerated. 244 Kan. at 263.

In the present case the factors were specifically set forth in the City's meetings. The City Commissioners had the information before them to consider. There was discussion of that information.

The minutes and transcripts of the City's meetings reflect a lively and thoughtful discussion with input by individual commissioners, the developer, surrounding property owners, the public (pro and con), and the planning staff.

In *Landau* we held the *Golden* factors are merely guidelines or suggested factors (Syl. ¶ 1); a City's decision will not be found unreasonable merely because the *Golden* factors were not specifically enumerated or subjected to an issue-oriented analysis (Syl. ¶ 2); and elected officials are closer to the electorate than the courts and, consequently, are more reflective of the community's perception of its image (Syl. ¶ 4). 244 Kan. 257.

In the case at bar, the City found that the PUD was not in conflict with the existing comprehensive plan and that the PUD would not have a substantially adverse effect on the neighborhood. The record indicates that the Planning Commission recommended approval and that the City accepted this recommendation. These findings coincide with *Golden* factors four and eight. The surrounding property owner objections were based on keeping the neighborhood single family. The property owners' objections addressed *Golden* factors one, two, and four. In *Landau*, we specifically stated that a City's actions are not per se unreasonable solely because the *Golden* factors are not enumerated. 244 Kan. at 263.

We find from a review of the record that it is adequate to enable the trial court to ʲmake a reasonableness determination under K.S.A. 12-712.

<u>Syllabus ¶ 9 of Landau Modified</u>

The trial court's ruling sustaining the Davises' motion for summary judgment was filed December 20, 1988. Our opinion in *Landau* was issued in January of 1989. Our reasoning in *Landau* on judicial review of municipal zoning ordinances was not available to the trial court.

In *Landau* we stated:

"If, in the view of the trial court, the findings of fact and conclusions of law are deficient under *Golden* and inadequate for a ʻreasonableness' determination, the trial court *may*, in exercising its discretion, select the alternative of remanding the case to the local governing authority for further findings and conclusions." (Emphasis added.) 244 Kan. at 274.

However, the *Landau* syllabus reads:

"If, in the view of the trial court, a city's or county's findings of fact and conclusions of law are deficient under *Golden v. City of Overland Park,* 224 Kan. 591, 584 P.2d 130 (1978), and inadequate for a 'reasonableness' determination, the case *is* to be remanded for further findings and conclusions by the local governing authority." (Emphasis added.) 244 Kan. 257, Syl. ¶ 9.

Our omission of the discretionary word "may" in syllabus ¶ 9 was inadvertent. Remand by the trial court is discretionary. Syllabus ¶ 9 is hereby modified to conform with the language of our opinion. 244 Kan. at 274.

The modified syllabus ¶ 9 in *Landau* is:

"If, in the view of the trial court, a City's or county's findings of fact and conclusions of law are deficient under *Golden v. City of Overland Park,* 224 Kan. 591, 584 P.2d 130 (1978), and inadequate for a 'reasonableness' determination, the trial court may, in exercising its discretion, select the alternative of remanding the case to the local governing authority for further findings and conclusions."

The Davises contend that an alternative to remanding the case to the zoning body is a per se finding of unreasonableness. We agree with the reasoning of the Court of Appeals that a finding of unreasonableness may not be based merely on an inadequate record. The trial court found that a reasonableness determination could not be made. The Davises' burden to show that the ordinance was unreasonable had not been met and thus it was improper to hold that the City's rezoning decision was unreasonable.

In *Landau* we referred to the trial court's alternative of receiving evidence on the issue of reasonableness. The trial court has discretion either to remand or to receive additional evidence on the issue of reasonableness.

### Zoning Ordinance—Reasonable as a Matter of Law

We disagree with the trial court and the Court of Appeals on the adequacy of the record upon which to base a reasonableness determination. In our view, the record was adequate.

We have held that a trial court has the inherent authority to summarily dispose of a matter on its own motion where: (1) no genuine issue as to any material fact remains, and (2) giving the benefit of all reasonable inferences drawn from the evidence, the

judgment must be for one of the parties as a matter of law. *Phillips v. Carson,* 240 Kan. 462, 474, 731 P.2d 820 (1987).

We have the same inherent authority.

In the case at bar, there is no genuine issue as to any material fact. The parties have assured us that the complete record was put before the trial court and that the same record is before us. We may summarily dispose of this case and enter judgment as a matter of law.

We must make the same review of the City's action as did the trial court. Whether the City's action was reasonable is a question of law to be determined upon the basis of the facts which were presented to the City. The City's rezoning action would be unreasonable only when such action was taken without regard to the benefit or harm involved to the community at large, including all interested parties, and was so wide of the mark that its unreasonableness lies outside the realm of fair debate. *Combined Investment Co. v. Board of Butler County Comm'rs,* 227 Kan. 17, 28, 605 P.2d 533 (1980).

Applying the rationale of *Landau* and *Golden* to the instant record, judgment must be entered for the City as a matter of law.

The rezoning decision of the City was reasonable, and ordinance No. 6482, authorizing the Planned Unit Development, is valid.

The Court of Appeals is reversed. The trial court is reversed. Judgment is entered for the City of Leavenworth.

ABBOTT, J., not participating.